## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### SCOTT V. JAMES, SECRETARY, &C.

#### November 21, 1912.

1. INJUNCTIONS—*Interference with Legislative Proceedings Amending the Constitution.*—The mode prescribed for amending the Constitution of this State is by the joint action of two successive legislatures, and of the people, manifested by an election held for that purpose. Until both legislatures have acted and the people have voted on the subject, the proposed amendment is simply in process of adoption. Courts are not authorized to interfere with the process of legislation. After legislation has been completed and its validity is questioned before any court in a proper proceeding, it is the duty of the court to pass upon its constitutionality wherever the rights of the parties litigant depend upon the solution of that question, but it has no right to interfere while a proposed amendment of the Constitution is simply in process of adoption.

2. ELECTIONS—*Injunction—Case in Judgment.*—Courts of equity will not, with few exceptions, injoin the holding of an election or interfere, by its process of injunction, with the holding of an election. The case in judgment is not within any exception to the general rule. The election sought to be injoined is to be held under the general election laws of the State, with referenc to a political question or matter of public policy, with which the judiciary, and particularly a court of equity, cannot interfere.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Harper & Goodman,* for the appellant.

*Harrison & Long, Martin Williams, D. H. Leake, Scott & Buchanan* and *Samuel W. Williams, Attorney-General,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

Appellant, J. A. Scott, in his capacity as a citizen and taxpayer of the State of Virginia, instituted this suit to enjoin the re-submission to a vote of the people of the proposed amendments of sections 119 and 120 of the Constitution, in relation, respectively, to commissioners of the revenue and treasurers in the cities, as provided for in an act of the general assembly, approved February 14, 1912.

The prayer of the bill was for an injunction restraining appellee, B. O. James, as Secretary of the Commonwealth, from sending out copies of the said act to the clerks of each county and municipal corporation in the State, as he was required to do by the fifth section thereof, on the ground that the general assembly, in passing said act, exceeded its constitutional authority in that the steps prescribed for the amendment of the Constitution had not been complied with, and that the act, therefore, conferred no authority upon the appellee to perform the duty sought to be enjoined.

The cause was heard in the lower court upon the bill and the demurrer and answer of appellee thereto, and the learned judge of that court was of opinion that the question of the constitutionality of the act of the general assembly complained of in the bill was prematurely raised, and that the court was without jurisdiction at that time to pass on that question for the reasons (1) that the court had no power to arrest or interfere with the process of legislation, and (2) that it had no power to enjoin the holding of an election.

Upon an appeal of the cause by appellant to this court it has been ably and exhaustively argued, both orally and upon printed briefs by counsel for the respective parties, and we are of opinion that there is no error in the judgment and decree complained of.

The learned judge below has, in a written opinion filed as a part of the record, so fully and clearly discussed the law and facts of the case, and so satisfactorily presented the views entertained by this court with respect to the questions involved, that we adopt the same as an entirely sufficient disposition of the controversy, adding only some authorities in point.

"In this case the complainant, as a citizen and taxpayer of the State of Virginia, suing for himself and on behalf of all other citizens and taxpayers of the State, seeks to enjoin the defendant, as Secretary of the Commonwealth, from executing one of the requirements of an act of the general assembly, which became a law February 14, 1912, without the Governor's signature, on the ground that the general assembly in passing the said act exceeded its constitutional authority, and that the act, therefore, is invalid and confers no power upon the defendant to perform the act sought to be enjoined.

"The motion was argued before the court upon the bill of complainant and exhibits therewith, upon the demurrer of the defendant and upon the answer of the defendant, together with certain exhibits filed therewith.

"The facts relative to the said act of the general assembly of February 14, 1912, are as follows: The legislature of Virginia, at its session in 1908, agreed to certain proposed amendments to the Constitution of Virginia, and, as ordained in section 196 of the Constitution of 1902, referred the proposed amendments to the next session of the general assembly. The legislature, at the session of 1910, in compliance with the provisions of the said section of the

Constitution, adopted an act agreeing to all of the pro-
posed amendments to the Constitution.  At the same ses-
sion of the legislature, by an act for that purpose, the pro-
posed amendments were submitted to the vote of the people.
Among the amendments so submitted were amendmnts to
section 119 and section 120 of the Constitution; the object
of the proposed amendments being, in the case of section
119, to remove the inhibition against the re-election of com-
missioners of the revenue in cities to succeed themselves,
and in the case of section 120, to remove the same inhibition
as to treasurers in cities, so that both commissioners of
revenue and treasurers in cities should become eligible for
re-election to the office for the next succeeding term.  An
amendment having a similar object as to treasurers and
commissioners of revenue in the counties was also sub-
mitted to the people at the same time, these two officers
being provided for in section 110 of the Constitution, and
both being embraced in the same section.  In providing
for the ballot upon which the vote was to be taken on the
amendments to section 119 and section 120 of the Consti-
tution, the said act directed that these two sections should
be embraced in a single ballot.

"The election so ordered by the legislature was held,
and upon the ballot for or against amending sections 119
and 120 of the Constitution, a majority of the votes were
cast in the negative.  The legislature which assembled in
1912 thereupon passed the act, the constitutionality of
which is assailed in this proceeding.  That act recites all
the proceedings which had been had looking to the amend-
ment of section 119 and section 120, and after reciting that
the proposed amendments to the said two sections were
coupled together in a single ballot so that a separate vote
could not be had on each of said amendments, and that the
will of the voters had, therefore, not been ascertained on
each of said amendments separately, and after reciting

that the people were entitled, in voting upon the said amendments, to have the ballot so arranged that a vote might be taken separately on the amendments to each section, and in order that the will of the people could be accurately ascertained on each of said amendments, they should be re-submitted to the people, the act in question was passed.

"Without the preamble and preliminary recitals, the act itself consists of six sections. The first section provides that it shall be the duty of the officers conducting the election to be held in November, 1912, to provide for a vote of the people upon the amendments to each of the said two sections upon a separate ballot for each section. The second section of the act provides, in the usual manner, for the counting and return of the ballots. The third section of the act directs the Secretary of the Commonwealth and the State Board of Canvassers to open and canvass the returns and submit to the Governor a statement of the result. The fourth section of the act authorizes the Governor to publish the result in newspapers. The fifth section of the act is as follows:

" '5. The Secretary of the Commonwealth shall cause to be sent to the clerks of each county and corporation as many copies of this act as there are places of voting therein; and it shall be the duty of said clerks to deliver the same to the sheriff for distribution, whose duty it shall be forthwith to post the said copies at some public place in each election district.'

"The sixth section of the act orders the expense of conducting the election to be defrayed as in the case of the election of members of the general assembly.

"The prayer of the bill filed in this case, and the motion now made before the court, is to enjoin the Secretary of the Commonwealth from sending to the clerks of the counties and cities copies of the act, as is directed in section 5 just above transcribed.

"It was contended by the plaintiff that this entire act is unconstitutional, and that the action required of the Secretary of the Commonwealth will cause certain expense to the State, and, therefore, the complainant, as a taxpayer and citizen, has a right to ask that the Secretary of the Commonwealth be enjoined from complying with the provisions of section 5 of the act. It was claimed and forcibly argued on behalf of the complainant that all the steps required by section 196 of the Constitution had been taken, and that the power of the legislature to take any action with reference to the said amendments had been exhausted when the legislature of 1910 adopted the act submitting the question of amendments to the people; that the submission of the amendments to both sections in a single ballot was valid and proper, and was according to precedents in submitting constitutional amendments to the people in several instances in past years; and that therefore the legislature of 1912 was without constitutional authority to declare the act of submission, passed by the legislature of 1910, ineffective, and by a further act again submit the amendments to a second vote of the people. This question of the constitutionality of the act was argued very exhaustively and with great ability, both on behalf of the complainant and on behalf of the defendant. I do not think, however, that the courts should pass upon this question at this time.

"When the Constitution of 1902 was adopted or ordained it became, by the will of the people of Virginia, the organic instrument containing the permanent system or frame of government by which the people of the State were thereafter to be governed. It is well established that in the popular form of constitutional government prevailing in the States in this country the legislative power resides in the general assembly provided for in the Constitution, without restriction except in so far as the exercise of the legislative power by the general assembly is limited by the

Constitution itself. Section 196 of the Constitution is intended to provide a mode whereby the permanent frame of government may be altered or amended. That section calls for three separate steps: One legislature must propose and agree to the amendment or amendments and enter them upon the journals of each house and refer the proposed amendments to the general assembly held after the next election of members of the house of delegates, the amendments to be published for three months previous to the time of such election in order to notify the people of their pendency; the next step is the action to be taken by the succeeding general assembly, whose duty it is made to vote upon the proposed amendments; and if they are again agreed to by the legislature, the third step required by the Constitution is 'Then it shall be the duty of the general assembly to submit such proposed amendment or amendments to the people, in such manner and at such times as it shall prescribe.'

"In order to amend the Constitution of Virginia, therefore, concurrent action, both of the legislature and of the people, by their vote, is required, and until the final vote of the people is had thereon the amendment is still in process of evolution or of enactment. In acting under section 196 the legislature is not engaged in the exercise of ordinary legislative functions; that is, it is not passing a general statutory law for the government of the people. In another sense, however, the legislature is engaged in performing legislative or law-making work, because the making or amending of a Constitution is the establishing of the highest law for the people; but while engaged in bringing about the establishment of such a higher law the legislature is not acting alone and has no power to act alone, but under section 196 of the Constitution the legislature and the people of the State must act conjointly, and until the result of their joint action is ascertained no amendment is finally refused or adopted.

"After a careful examination of most of the authorities submitted by counsel in argument, there are two principles of law governing a court of equity in such a case as this, which seem to me to be well established.

"1. I do not think that a court of equity, nor any tribunal of the judiciary department of government is authorized to interfere with the process of legislation. After legislation has been completed and its validity is questioned before any court in a proper proceeding, the duty of the court is to pass upon its constitutionality wherever the rights of parties litigant depend upon the solution of that question. If a bill is passed by both houses of the general assembly and is about to be transmitted to the Governor for his veto or signature, it is very clear that the judiciary department of the government could not enjoin the transmission of the enacted bill to the Governor on the ground that it was unconstitutional, as such a proceeding would manifestly be an unwarranted interference by the courts with the constitutional processes of the legislative department. So, in the case at bar, the amending of the Constitution is the making of a permanent law for the people of the State by which they are to be governed in the future, and the courts cannot interfere to stop any of the proceedings while this permanent law is in process of being made. If the amendment is not adopted, of course, no question will ever come before the court. If, upon completion of the proceedings, the validity of the amendment is assailed on the ground that the several provisions of the Constitution have not been complied with, then the courts can pass upon the validity of the amendment. The judiciary department has the power, and it is its duty, to pass upon the validity of a constitutional enactment when put in force, as well as upon the validity of an act of the legislature regularly passed and put in effect.

"2. It is a well settled principle regulating the jurisdiction of courts of equity that such courts will not, with few

exceptions, enjoin the holding of an election, or interfere, by its process of injunction, with the holding of an election. Under section 196 it is clear that after the first and the next succeeding legislatures have both agreed to the proposed amendments, the general assembly has no further function to perform than to submit the proposed amendments to a vote of the people; in other words, to direct an election to ascertain the will of the people upon the amendments. The analysis of the act in question here which I have made shows that this act of 1912, in effect and substance, does nothing but direct an election to be held upon the proposed amendments to section 119 and section 120 of the Constitution. The requirement that the Secretary of the Commonwealth shall send out copies of the act to the officers of the counties and cities is preliminary to, and in aid of, the election which is to be held. How can the Secretary of the Commonwealth be enjoined from sending out copies of the act, as he is required to do, without interfering with the election which is to be held? If the election cannot be held without these copies of the act being sent out, then the object of this proceeding is not only to interfere with an election, but actually to prevent the election being held. If this is not the case, then it may be said that the act of the Secretary is not essential, and that if he is enjoined the officers of the counties and cities may, nevertheless, obtain copies of the act from other sources and proceed with the election. If this can be done, then the proposed injunction would be nugatory, and this case presents only a moot question. In some cases the courts have enjoined the holding of an election in which the property rights of the plaintiff were in danger, but that cannot be said to be the case here. I think it would be extending the power of the process of injunction too far to interfere in a case of this character to prevent an expression of the popular will by an election ordered to be held under the general election laws of the State. The court cannot say in advance

in this case that the property rights of the plaintiff are affected, nor can it say in advance what might be the result of the adoption of the amendments in general, for the election might result in favor of those voting against adoption. As the matter now stands, the election about to be held will be held under the general election laws of the State, with reference to a political question or matter of public policy, with which the judiciary and particularly a court of equity cannot interfere.

"In considering the question just mentioned, I have consulted more especially the following authorities which, it seems to me, establish the conclusions which I have reached, viz.: *Fletcher* v. *Tuttle,* 151 Ill. 41 [37 N. E. 683], 25 L. R. A. 143 [45 Am. St. Rep. 220]; *People* v. *Mills,* 30 Col. 262 [70 Pac. 322]; *Cranmer* v. *Thorson,* 9 S. D. 149 [68 N. W. 202, 33 L. R. A. 582]; *Duggan* v. *Emporia* (decided March, 1911), 84 Kansas 429 [114 Pac. 235], which is also reported in the following series of cases to which annotations are appended: 21 Am. & Eng. Ann. Cases, p. 719; American Annotated Cases—Ann. Cases 1912 A, p. 719. Various authorities were cited in argument, but I have called attention to the foregoing because they are the most recent.

"The case of *Livermore* v. *Waite,* 102 Cal. 113 [36 Pac. 424, 25 L. R. A. 312], seems to sustain the power of a court of equity to issue an injunction in a case such as this, but the reasoning of the court and the result reached by it is, in my opinion, not in accord with the weight of authority nor with the true principles which control the relation between the different departments of government under our State constitutions.

"I am of the opinion that the injunction prayed for should not be awarded in this case, because to do so would be interfering with the process of legislation or constitution-making, and would be using the authority of the judiciary department to prevent the holding of an election."

In addition to the authorities cited in the above opinion, taking the view that courts have not, with few exceptions, the power to interfere with elections, see the following: 5 Pom. Eq., secs. 331, 332; McCrary on Elections, sec. 386; Paine on Elections, sec. 940; *Lamb* v. *Railroad Co.,* 39 Iowa 333; *Jones* v. *Black,* 48 Ala. 540; 2 High on Injunctions, sec. 1316; 10 Am. & Eng. Enc. L. (2nd ed.), p. 816; 22 Cyc. 885; *Fleming* v. *Guthrie,* 32 W. Va. 1, 9 S. E. 23, 3 L. R. A. 53, 25 Am. St. Rep. 792; *Alderson* v. *Commissioners,* 32 W. Va. 640, 9 S. E. 868, 25 Am. St. Rep. 845, 5 L. R. A. 334; *Thorson's Case,* 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582; *Walton* v. *Develing,* 61 Ill. 201; *Shoemaker* v. *Des Moines,* 129 Iowa 244, 105 N. W. 520, 3 L. R. A. (N. S.) 382, and note; *Parley* v. *Folge,* 78 S. C. 570, 59 S. E. 707; *Morgan* v. *Wetzel County Court,* 53 W. Va. 372, 44 S. E. 182; *Duggan* v. *City of Emporia,* 84 Kan. 429, 114 Pac. 235.

The authorities just cited not only sustain the views of Mr. Pomeroy in respect to the non-interference by the courts in elections and in pointedly saying in section 332 of his work, *supra,* "And a secretary of State will not be enjoined from publishing proposed amendments to the State Constitution, although such amendments, if adopted, might be invalid;" but they state well grounded reasons why courts of equity will not enjoin the conducting of any kind of election and show that those reasons apply with greater force to an election held on a constitutional amendment than in any other case. Those authorities, in effect, say: "Where the people are undertaking to exercise the right reserved to them to change the fundamental law under which they live, if the courts will not (with few exceptions) enjoin an ordinary election, it must follow that they would not enjoin an election upon a proposition to change the fundamental law."

The decree under consideration is affirmed.

*Affirmed.*