# CIRCUIT COURT OF THE CITY OF RICHMOND

Robert G. Marshall,
Frank D. Hargrove, Sr.,
Richard H. Black,
L. Scott Lingamfelter,
Clifford L. Athey, Jr.,
Thomas D. Gear, and
John J. Welch, III

    v.

Mark R. Warner,
Governor of Virginia,
Timothy M. Kaine,
Lieutenant Governor
of Virginia, and
William J. Howell,
Speaker of the Virginia
House of Delegates

April 29, 2004

Case No. CH04-504-3

BY JUDGE T. J. MARKOW

    This case is before the court on a Demurrer and a Motion to Quash. The Plaintiffs are members of the Virginia House of Delegates. The Defendants are the Governor of Virginia, the Lieutenant Governor of Virginia, and the

Speaker of the Virginia House of Delegates. The Plaintiffs have brought a suit for declaratory judgment and injunctions against each of the Defendants. The Attorney General was granted leave to appear as *amicus curiae* and not as a party defendant, as he requested.

The suit by the Plaintiffs challenges the constitutionality of legislation currently before the General Assembly. House and Senate Bill 5001 ("Bill 5001"), also known as the "Budget Bill," provides both for tax increases to raise monies and the appropriation of those monies. The Plaintiffs argue that this is the combination of two objects in one piece of legislation and violates the single object rule contained in Article IV, Section 12, of the Virginia Constitution.

The Plaintiffs contend that due to the unconstitutionality of Bill 5001, the House and the Senate have been unable to agree on a Budget Bill to be presented to the Governor. Further, the Plaintiffs contend that, unless this court were to declare the Bill unconstitutional and/or enjoin the Governor, Lieutenant Governor, and Speaker of the House from signing the Bill, it is likely that the House and the Senate will continue to be unable to agree on a Budget Bill. If no agreement can be made before July 1, 2004, the Plaintiffs urge that there will not be any funds available to continue the operations of the government of the Commonwealth. They claim that they will be harmed, as there is no money to fund their pay and expenses.

The Defendants have demurred on various grounds. First, the Defendants argue that the Plaintiffs have failed to allege facts sufficient to give them standing to test the constitutionality of Bill 5001 and obtain the relief requested in the Bill of Complaint. Second, the Defendants argue that this court lacks subject matter jurisdiction to consider this case due to Article I, Section 5, and Article III, Section 1, of the Virginia Constitution. Third, the Defendants make a textual argument regarding the wording of Article IV, Section 12, of the Virginia Constitution. Fourth, the Defendants contend that this court has not been presented with a justiciable controversy and has, instead, been asked to issue an advisory opinion. Fifth, the Defendants argue that they are protected by the doctrine of sovereign immunity. Last, the Defendants argue that the injunctive relief sought by the Plaintiffs is inappropriate. The Defendants have also moved to quash process on them on the grounds that such process violates Article I, Section 5, and Article III, Section 1, of the Virginia Constitution. The court will consider each of these grounds in turn.

## I. *Standing*

The Defendants first argue that the Plaintiffs lack the requisite standing to challenge the constitutionality of Bill 5001. The court agrees. In order to have standing to bring a declaratory judgment action in Virginia, a plaintiff must have a "justiciable interest" in the subject matter of the action. *Lynchburg Traffic Bureau v. Norfolk & W. Ry.*, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966). A plaintiff's interest must be such that "he has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." *Cupp v. Board of Supervisors*, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984). As the Plaintiffs' Memorandum notes, it is insufficient for standing purposes that a plaintiff advances a public right or seeks to redress an injury shared by the public at large. *Wilkins v. West*, 264 Va. 447, 459, 571 S.E.2d 100, 106 (2002).

The Plaintiffs have alleged three grounds for standing. First, they argue that they are injured as members of the House of Delegates in that they will be required to approve an unconstitutional bill or abstain. Second, the Plaintiffs contend that they are injured as members of the House of Delegates because they will lose their funding if a constitutional Budget Bill fails to pass both the House and the Senate. Last, the Plaintiffs argue that they are injured as individual state taxpayers. The court finds that none of these grounds are sufficient to give the Plaintiffs standing in the case at bar. The concept of standing requires that a plaintiff suffer some injury or harm from the action or inaction of the defendant. Assuming that the Plaintiffs are correct in that they will be required to vote against their oath of office in voting for a bill that they consider to be unconstitutional, abstain, or vote their conscience against such a bill, this does not amount to a cognizable injury for the purpose of standing. Determining whether to vote for or against a particular piece of legislation is the very essence of the duties required of our Delegates and Senators. Requiring a Delegate to conform with his constitutional duty cannot amount to a sufficient harm or injury.

In addition, the Plaintiffs do not have standing solely because the lack of a Budget Bill may affect the funding for their offices. As stated above, in order to have standing, a plaintiff must be seeking to redress more than simply a public injury. Instead, a plaintiff "must establish that he has a 'personal stake' in the alleged dispute and that the alleged injury suffered is particularized to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). The injury suffered by the Plaintiffs regarding funding if the Budget Bill is not passed

before July 1, 2004, is an injury suffered by all employees of the Commonwealth, and not peculiar to the Plaintiffs.

Finally, the Plaintiffs do not have standing as individual taxpayers. In Virginia, state taxpayers do not have standing to challenge a state statute. *Goldman v. Landsidle*, 262 Va. 364, 372-74, 552 S.E.2d 67, 72 (2001).

For the above reasons, the court finds that the Plaintiffs lack the standing to challenge the constitutionality of Bill 5001 under the single purpose rule.

## II. *Separation of Powers*

The Defendants also argue that this court does not have subject matter jurisdiction over the Bill of Complaint filed by the Plaintiffs. They argue that this is because the relief sought by the Plaintiffs would violate Article I, Section 5, and Article III, Section 1, of the Virginia Constitution.

Article III, Section 1, of the Virginia Constitution provides that "[t]he legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time." This provision mandates that "the government function through three equal but separate branches with specific responsibilities and powers assigned to each, and that no one branch may exercise the functions or powers of another except as specifically authorized by the constitution." *Taylor v. Worrell Enter.*, 242 Va. 219, 221, 409 S.E.2d 136, 137-38 (1991). In Virginia, the legislative power clearly rests with the General Assembly. Va. Const., art. IV, § 1. In order to determine whether this court's action would violate the separation of powers doctrine, it must be determined to what extent such an encroachment would prevent the General Assembly from meeting its constitutional duties. *Taylor* at 223, 409 S.E.2d at 139.

The Plaintiffs argue that the separation of powers doctrine would not be violated if this court were to act because the judiciary is empowered to interpret the Virginia Constitution, declare its boundaries, and enjoin legislative action that is unconstitutional. While this may be true, the injunction sought by the Plaintiffs does not fall within this narrow exception to the separation of powers doctrine.

The Plaintiffs ask this court to, in effect, mandate to the General Assembly how it should go about the drafting, introduction, debate, and voting on a Budget Bill. Specifically, the Plaintiffs ask that the court find fault with the rulings of the Lieutenant Governor and the Speaker of the House on germaneness issues. It is solidly within the domain of the legislature in Virginia to draft legislation, debate and consider pending legislation, and vote on legislation and for the presiding officers to make parliamentary

rulings. If this court were to interject itself into this legislative process, it would certainly violate the inquiry set forth in *Taylor*. In other words, this court's participation in the decision-making process of the legislature would greatly burden the General Assembly's ability to perform its constitutional duties. A more egregious example of the oft criticized "judicial activism" would be hard to imagine.

The Virginia Supreme Court has specifically stated:

> I do not think that a court of equity, nor any tribunal of the judiciary department of government, is authorized to interfere with the process of legislation. . . If a bill is passed by both houses of the General Assembly, and is about to be transmitted to the Governor for his veto or signature, it is very clear that the judiciary department of the government could not enjoin the transmission of the enacted bill to the Governor, on the ground that it was unconstitutional, as such a proceeding would manifestly be an unwarranted interference by the courts with the constitutional processes of the legislative department.

*Scott v. James*, 114 Va. 297, 304, 76 S.E. 283, 285 (1912). If this court cannot step in to stop the transmission of the bill to the Governor, it certainly may not interfere with the Lieutenant Governor's and Speaker of the House's constitutional duties in signing legislation passed by their respective houses. "[C]ourts cannot interfere to stop any of the proceedings while this permanent law is in process of being made." *Id.*

This court cannot intervene in the business of the legislature, even if the possible results of the General Assembly's not passing a Budget Bill before July 1, 2004, are exceptional. It is the province of this court to determine the legality and constitutionality of the laws of the Commonwealth and actions of its agents. It is not, however, within this court's province to enjoin the highest officials of the Commonwealth from performing their constitutional duties or exercising their constitutional discretion. Until the legislative process is complete regarding Bill 5001, this court cannot provide any remedy to the Plaintiffs.

### III. *Textual Argument*

The Defendants also argue that the text of Article IV, Section 12, of the Virginia Constitution itself shows that the Plaintiffs have failed to state a cause of action upon which this court can grant relief. The court agrees.

Article IV, Section 12, of the Virginia Constitution states that "[n]o *law* shall embrace more than one object, which shall be expressed in its title." (Emphasis added.) This provision simply does not apply to Bill 5001, as Bill 5001 cannot fairly be defined as a "law." The plain and simple meaning of the word "law" implies a statute that is in force. Bill 5001 is merely a bill not in force and, until such time that it becomes a law, it cannot violate the Virginia Constitution as urged by the Plaintiffs.

## IV. *Declaratory Judgment*

The Defendants further argue that this court has been asked to issue an advisory opinion, which it does not have the authority to give. *See, e.g., Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 104, 500 S.E.2d 503, 506 (1998). In order to be entitled to declaratory relief, a plaintiff must present a "controversy ... involv[ing] specific adverse claims that are based on present not future or speculative facts that are ripe for judicial assessment." *Id.* at 103-04, 500 S.E.2d at 506.

The Plaintiffs have not alleged any concrete, adverse issue that this court may entertain. Instead, the Plaintiffs have merely alleged that there is the possibility that an unconstitutional statute may be passed. In this case, there is only a proposed, but not direct or immediate harm. Until Bill 5001 is actually enacted, there is no "controversy" to be decided by this court.

## V. *Sovereign Immunity and Injunctive Relief*

Finally, the Defendants argue that they are immune from the present suit under the doctrine of sovereign immunity and that the injunctive relief sought by the Plaintiffs is inappropriate. Having previously decided that the demurrers should be sustained, there is no need for the court to consider the defense of sovereign immunity or the nature of the relief sought.

The court understands the frustration of the Plaintiffs regarding the issues in the case at bar and the Plaintiffs' desire for a swift resolution of the current impasse. The remedies, however, sought by the Plaintiffs are far more than this court is authorized to give (or should give in the sound exercise of public policy). Therefore, for the above reasons, it is hereby ordered that the Demurrers and Motion to Quash are sustained. As there is nothing to be gained by amendment to the Bill of Complaint, the Bill of Complaint is dismissed.