# CIRCUIT COURT OF THE CITY OF RICHMOND

A. Donald McEachin,
Senator of Virginia

v.

William T. Bolling,
Lieutenant Governor
of Virginia

December 16, 2011

Case No. CL11-5456

BY JUDGE BEVERLY W. SNUKALS

This case is before the Court on the Plaintiff's Motion for Temporary Injunction pursuant to Va. Code § 8.01-620 *et seq*. The Plaintiff, A. Donald McEachin, is a Member of the Senate. The Defendant, William T. Bolling, is the Lieutenant Governor of Virginia.

On December 5, 2011, the Plaintiff filed a declaratory judgment action requesting this Court to declare that the Lieutenant Governor is not entitled to vote to break a tie on certain matters during the upcoming session of the General Assembly. To date, the Court has no record of the Lieutenant Governor's being served with the Complaint. In addition, on the same day, the Plaintiff filed a Motion for Temporary Injunction requesting this Court to enjoin the Lieutenant Governor from casting any tie-breaking vote on Senate organization, tax matters, election of judges, amendments to the Constitution, and other matters requiring a majority vote of the members elected to each house. The Parties appeared before this Court to argue the Plaintiff's Motion for Temporary Injunction on December 9, 2011. Upon reviewing the memoranda submitted by the Parties and hearing oral arguments, the Court denies the Plaintiff's Motion for Temporary Injunction for the following reasons.

*Temporary Injunction Standard*

The Virginia Supreme Court has consistently stated "the granting of an injunction is an extraordinary remedy." *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 60, 662 S.E.2d 44, 53 (2008). Although there are no Virginia Supreme Court cases directly setting forth the standard for an injunction, the United States Supreme Court articulated what factors must be shown in *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The test established in *Winter* requires the Plaintiff to show (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) a balance of the equities tips in his favor, and (4) an injunction is in the public interest. *Id.* at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 2219, 171 L. Ed. 2d 1, 16 (2008)). The Plaintiff must clearly show all four factors. *The Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated in part on other grounds*, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) (citing *Winter*, 555 U.S. at 22, 129 S. Ct. at 374, 172 L. Ed. 2d at 261 (2008)). Both Parties have agreed that this is the applicable standard in Virginia. The Defendant suggests that the Plaintiff might have to meet a higher burden of proof because the temporary injunction would afford the Plaintiff substantially all of the relief he may recover at the conclusion of the declaratory judgment action. However, because the Court does not believe the Plaintiff even meets the *Winter* standard, it is unnecessary to address the higher standard.

*Likelihood of Success on Merits*

The parties present procedural as well as substantive arguments as to whether the declaratory judgment action is likely to be successful. It is only necessary for the Court to address the procedural reasons for the deficiencies in the underlying action.

A. *Ripeness*

Standing was not raised by the Defendant as a possible bar to the declaratory judgment action.

This Court's power to issue a declaratory judgment is limited to "cases of actual controversy." Va. Code Ann. § 8.01-184 (2011). The actual controversy must be "one that is justiciable, that is, where specific adverse claims based upon present rather than future or speculative facts, are ripe for judicial adjustment." *Board of Supervisors of James City County v. Rowe*, 216 Va. 128, 132, 216 S.E.2d 199, 204-05 (1975) (citing *City of Fairfax v. Shanklin*, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964)). If there is no actual controversy, this Court is without jurisdiction to hear the case

as "the rendering of advisory opinions is not a part of the function of the judiciary in Virginia." *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 418, 177 S.E.2d 519, 522 (1970) (citing *Criterion Ins. Co. v. Grange Mut. Cas. Co.*, 210 Va. 446, 449, 171 S.E.2d 669, 671 (1970)). There are significant ripeness issues related to the underlying matter that prevent the Plaintiff from clearly showing he will likely succeed on the merits.

The Plaintiff contends that the Lieutenant Governor should be enjoined from breaking a tie on matters requiring the majority vote of members elected, such as tax and budget matters, appointments, and constitutional amendments. However, in those instances, a series of events would have to occur for the Plaintiff to suffer any injury. The matter would have to get through committee, the Senate would have to vote on the issue, the vote would have to end up in a tie, the Lieutenant Governor would have to vote to break the tie, and the Governor might ultimately have to approve the matter or sign the legislation. For this Court to intervene at this point before the legislative process has even begun would be tantamount to issuing an impermissible advisory opinion. The declaratory judgment statute was not intended to vest courts with authority to render advisory opinions, decide moot questions, or answer inquiries which are merely speculative. *See Patterson's Ex'rs v. Patterson*, 144 Va. 113, 119-20, 131 S.E. 217, 219 (1926).

The Plaintiff also seeks to enjoin the Lieutenant Governor from breaking a tie on organizational matters such as rule-making and committee appointments. It is equally speculative that an evenly divided Senate will vote along party lines on such matters. In fact, as pointed out by the Defendant, the Senate was able to organize itself following the 1995 election.

The Plaintiff argues there is an actual controversy before this Court because the Defendant has proclaimed his ability to vote on essentially all matters that result in a tie. The Plaintiff cites two cases in which threatened actions were ripe for decision in a declaratory judgment. However, reliance on these cases is misplaced.

In *Cupp v. Board of Supervisors of Fairfax County*, 227 Va. 580, 318 S.E.2d 407 (1984), the Virginia Supreme Court held that a property owner aggrieved by local government action was entitled to declaratory relief. In that case, the dispute between the parties was documented in correspondence, official written reports, and in a newly adopted ordinance. Furthermore, the Planning Commission had already made a formal decision on the application for a permit. The other case cited, *Terry v. Wilder*, 29 Va. Cir. 418 (1992), dealt with definitive actions of the Governor in removing the Attorney General as counsel to the Virginia Retirement System. However, the Court in *Terry* declined to grant a temporary injunction because, although the Attorney General presented evidence of harm if doubts about legal representation continued, such evidence was insufficient to support

the need for a temporary injunction. Here, no action whatsoever has been taken by the Lieutenant Governor or the General Assembly.

In this case, the only evidence of purported threatened action submitted to the Court is contained in newspaper articles and a radio interview where the Lieutenant Governor states his belief that he has the ability to break a tie in certain situations. For example, "if the matter of [Senate] organization comes to a vote. . . . [t]here is absolutely no doubt in my mind that I can vote on that issue should it result in a tie vote." Laura Vozzella, "Virginia Democrats Look to Courts To Stop GOP Senate Takeover," *Washington Post*, Nov. 21, 2011. At the hearing, the Plaintiff submitted a declaration containing a statement of the Governor paraphrasing the Lieutenant Governor: "[i]t is 20-20 but on organizational matters on the Virginia Senate, the [L]ieutenant [G]overnor breaks the tie and Bill Boiling has stated his intention is to vote with Republicans and organize accordingly." Associated Press, "Virginia Democrats Ponder Lawsuit Testing GOP's Right To Seize Power in Evenly Divided Senate," *Washington Post*, Nov. 21, 2011. Notwithstanding these statements, there is an equal possibility that a strict party-line vote does not occur on the various matters that may or may not be presented during the General Assembly. The Lieutenant Governor also stated in a radio interview "Republicans aren't monolithic thinkers. We don't always agree on everything." *Charlottesville Right Now: 11-9-11 Bill Bolling*: 11-9-11 (1070 WINA radio broadcast Nov. 9, 2011). This last statement shows the Lieutenant Governor acknowledges a strict party-line vote may not occur on every issue brought to the Senate during the upcoming session. As a result, the Court finds these statements in the Complaint and Declaration do not rise to the level displayed in *Cupp* or *Terry*, and consequently, it is not likely they are sufficient to create an actual controversy.

## B. *Separation of Powers*

The Defendant also argues that the relief sought by the Plaintiff would violate Article I, Section V, and Article III, Section I, of the Virginia Constitution. In essence, the Plaintiff is asking this Court to invade the province of the General Assembly, the legislative arm of government.

The Virginia Constitution provides that "[t]he legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others." Va. Const., art. III, § 1. This Court has rejected the act of intervening in the business of the legislature in other similar cases. In *Scott v. James*, 114 Va. 297, 76 S.E. 283 (1912), the Virginia Supreme Court affirmed this Court's denial of an injunction to restrain the Secretary of the Commonwealth from sending copies of an act to localities because the General Assembly's passage of the act exceeded its constitutional authority. The Virginia Supreme Court specifically stated:

> If a bill is passed by both houses of the general assembly and is about to be transmitted to the Governor for his veto or signature, it is very clear that the judiciary department of the government could not enjoin the transmission of the enacted bill to the Governor on the ground that it was unconstitutional, as such a proceeding would manifestly be an unwarranted interference by the courts with the constitutional processes of the legislative department.

*Id.* at 304, 76 S.E. at 285.

Likewise, in *Marshall v. Warner*, 64 Va. Cir. 389 (2004), this Court dismissed a Complaint for declaratory judgment filed by members of the House of Delegates against the Governor, Lieutenant Governor, and Speaker of the House. The Complaint requested this Court to declare the proposed "Budget Bill" unconstitutional and enjoin the Governor, Lieutenant Governor, and Speaker from signing the bill. The plaintiffs argued that, unless these officials were enjoined, the House and Senate would continue to be unable to agree on a budget bill. The Court, relying on *Scott*, stated "[i]f this court cannot step in to stop the transmission of the bill to the Governor, it certainly may not interfere with the Lieutenant Governor's and Speaker of the House's constitutional duties in signing legislation passed by their respective houses." *Id.* at 393.

Similarly, in this case, this Court cannot intervene in the normal operating procedures of the Senate and enjoin one of the highest officials of the Commonwealth from performing his constitutional duties. If the Court were to intervene, as the Plaintiff suggests, the Court would be intervening at a stage much earlier in the legislative process than was the case in either *Scott* or *Marshall*. The Plaintiff concedes that, despite the even split in the Senate after the 1995 election, the Members of the Senate settled Rules that would govern themselves, and "[t]his was all accomplished without intervention from the Democratic Lieutenant Governor." Decl. of A. Donald McEachin ¶ 10. It is noteworthy that an equally divided Senate was able to enact Rules in 1996 without the intervention of the courts. The power of an injunction or a declaratory judgment action cannot be used to force parties in disagreement to negotiate a compromise.

## C. *Sovereign Immunity*

Having found that the Plaintiff is likely to be unsuccessful because of ripeness and separation of powers for the above-stated reasons, there is no need for the Court to consider the merits of a Sovereign Immunity Plea.

*Irreparable Harm*

In addition to the requirement of making a clear showing that he will likely succeed on the merits at trial, the Plaintiff is also required to make a clear showing that he is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. The Plaintiff argues he will be irreparably harmed because legislator immunity can be asserted by the Lieutenant Governor so that the underlying declaratory judgment action will not be heard until after the General Assembly concludes its session. *See* Va. Code Ann. §§ 30-4 to 30-5 (2011). There can be no showing of irreparable harm when the Plaintiff cannot even show he will actually suffer any harm at all. Moreover, the Plaintiff waited almost a month after the election before bringing this suit and still has not served the suit. It is because of this delay that the Court heard this case on the eve of immunity.

*Balance of the Equities*

Each party essentially argues that, regardless of how the Court rules, one party will be affected. Consequently, the balance of equities does not favor either side because both sides could potentially be injured. If the Lieutenant Governor is enjoined and there is a tie vote, then the Lieutenant Governor's vote will be not be counted and his party's agenda will be thwarted. If the Court denies the injunction, the Plaintiff's vote will be negated and his party's agenda will be thwarted.

The Plaintiff further argues that legislative immunity will not work in conjunction with a temporary injunction to harm either party. If a temporary injunction is granted and the Plaintiff invokes immunity, the Court can dissolve the injunction. Conversely, the Plaintiff argues, if the Lieutenant Governor invokes immunity, the Court can extend the injunction. The Court cannot think of any reason why the Lieutenant Governor would ever invoke immunity if an injunction was granted. Logically, he would move to have the declaratory judgment action heard as soon as possible. However, in the meantime, his tie-breaking vote would be limited. Therefore, the Plaintiff is unable to show that a balance of the equities weighs in his favor.

*Public Interest*

The Plaintiff argues that an injunction is in the public interest because certain actions of the General Assembly could be questioned should the Lieutenant Governor vote in a manner that is rendered unconstitutional by a court after the fact. On the other hand, the Defendant asserts the public has an equally important interest in maintaining the integrity of the legislative process and the separation of powers. There are numerous cases throughout Virginia's jurisprudence in which the Supreme Court has refrained from

enjoining the process of legislation. See *NAACP v. Commission on Offenses against Admin. of Justice*, 201 Va. 890, 114 S.E.2d 721 (1960); *Scott v. James*, 114 Va. 297, 76 S.E. 283 (1912); *Wise v. Bigger*, 79 Va. 269 (1884). In addition, the public interest would not be served by having a deadlocked Senate that is unable to agree on organization. Again, no matter how the Court rules, arguably some interest of the public may be affected. Therefore, having considered the public consequences in employing the extraordinary remedy of a temporary injunction, the Court finds the Plaintiff has not met his burden.

Since the Plaintiff has not made a clear showing on all four factors under *Winter*, the Court denies the Plaintiff's Motion for Temporary Injunction.