# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Wednesday, the 4th day of March, 2026.*

Present:  All the Justices

STEVEN KOSKI, ET AL.,                                                                                       APPELLANTS,

 against             Record No. 260169
                     Circuit Court No. CL26-266

REPUBLICAN NATIONAL COMMITTEE, ET AL.,                                           APPELLEES.

UPON A PETITION FOR REVIEW UNDER CODE § 8.01-626

This matter comes before the Court upon a petition for review under Code § 8.01-626. Among other things, the petitioners seek a stay of a temporary restraining order issued by the Circuit Court of Tazewell County that enjoins state election officials and Tazewell election officials from "administering, preparing for, taking any action to further the procedure of the referendum, or otherwise moving forward with causing an election to be held on the proposed constitutional amendment" until March 18, 2026, *see* Order at 5 (Feb. 19, 2026). For the following reasons, we grant the petition for review, stay the temporary restraining order ("TRO"), and rule on various other motions arising out of this case.

## I.

Code § 8.01-626 applies only to a preliminary injunction, not a TRO. A TRO is an order of "brief duration" entered "for the limited purpose of preserving the status quo between the parties pending a hearing on a motion for a preliminary injunction." Rule 3:26(b). If a TRO carries "many of the hallmarks of a preliminary injunction," the TRO may be treated as "an appealable preliminary injunction" for purposes of an interlocutory appeal. *Department of Educ. v. California*, 604 U.S. 650, 651 (2025); *see also Sampson v. Murray*, 415 U.S. 61, 86-88 (1974).[1]

---

[1] *See generally* 13 James Wm. Moore et al., Moore's Federal Practice § 65.24 (3d ed. 2026); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3922.1, at 90 (2012).

Given the scope and impact of the circuit court's TRO in this case, we believe it has the characteristics of a preliminary injunction and thus falls within our appellate jurisdiction under Code § 8.01-626. The petitioners in this case have moved for an appellate stay of the TRO. "A stay does not affect the finality or validity of the judgment; only an order of reversal by an appellate court can do that. The stay merely suspends the plaintiff's right to execute on the judgment." W. Hamilton Bryson, Virginia Civil Procedure § 12.06, at 12-27 (5th ed. 2017). We agree that the TRO should be stayed until further order of this Court. In an ordinary case, we would limit our appellate review of the circuit court's de facto preliminary injunction to the factors outlined in Rule 3:26. But this is not an ordinary case.

II.

In a constitutional republic, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). That axiom of Chief Justice John Marshall remains as true today as it was two centuries ago. *See, e.g.*, *Vlaming v. West Point Sch. Bd.*, 302 Va. 504, 563 n.32 (2023); *Howell v. McAuliffe*, 292 Va. 320, 350 (2016). This axiom is a meta principle that governs not only what courts say the law is but also how it should be enforced. This may seem like a semantic nuance, but it is nothing of the kind. The power to declare the law and the power to enforce it are different foundational pillars in the architecture of judicial power.

For over a century, we have recognized the "well settled principle regulating the jurisdiction of courts of equity that such courts will not, with few exceptions, enjoin the holding of an election, or interfere, by its process of injunction, with the holding of an election." *Scott v. James*, 114 Va. 297, 304-05 (1912). This principle does not mean that judicial review of allegedly unlawful elections ceases to exist. It only means that, as a prudential matter, Virginia courts generally should not prematurely enjoin an upcoming election. As we explained in *Scott*:

> [T]he amending of the Constitution is the making of a permanent law for the people of the State by which they are to be governed in the future, and the courts cannot interfere to stop any of the proceedings while this permanent law is in process of being made. If the amendment is not adopted, of course, no question will ever come before the court. If, upon completion of the proceedings, the validity of the amendment is assailed on the ground that the several provisions of the Constitution have not been complied with, then the courts can pass upon the validity of the amendment.

*Id.* at 304.

In *Scott*, we relied heavily on Professor Pomeroy's celebrated treatise on equitable remedies. *See id.* at 307 (citing 5 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 331-32, at 587-89 (3d ed. 1905)). The weight of historical authority, Pomeroy demonstrated, established that "an injunction will not issue to restrain the holding of an election although it is alleged that it is without authority of law, or that the act authorizing it or providing for apportionment is unconstitutional." 5 Pomeroy, *supra*, § 331, at 587-88 (footnote omitted). Furthermore, "the mere fact that the cost of the election will have to be borne by the state and indirectly by the taxpayers, is no ground for an injunction at the relation of a taxpayer, for the injury is too trifling." *Id.* at 588. We also relied upon Halbert Paine's commentary in *Scott*, and our holding tracked his reasoning:

> If the election, when held, was not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But that is quite another thing from enjoining the people from peaceably assembling and casting their votes for, or against, any proposition submitted to them under the color of law.

Halbert E. Paine, A Treatise on the Law of Elections to Public Offices 780-81 (1888).[2] These prudential concerns, *Scott* concluded, apply to requests for injunctive relief to "enjoin an election upon a proposition to change the fundamental law." *Scott*, 114 Va. at 307.[3]

---

[2] *Scott* relied on other respected legal scholars that joined fully in Pomeroy's restatement of the governing principles. *See* 2 James L. High, A Treatise on the Law of Injunctions § 1316, at 1333 (Shirley T. High ed., 4th ed. 1905) ("[I]t has been held that, the power of holding an election being a political power, equity has no jurisdiction to restrain officers entrusted by law with the duty of holding elections from the exercise of such power." (altering archaic spelling)); George W. McCrary, A Treatise on the American Law of Elections § 386, at 290-91 (4th ed. 1897) (recognizing that absent statutory authority, "a court of chancery has no power to enjoin the holding of an election"); 10 The American and English Encyclopedia of Law 817 (2d ed. 1899) ("The power to hold elections is a political one, and a court of equity has no jurisdiction to enjoin the proper officer from holding an election." (footnote omitted)).

[3] We leave for another day the precedential impact of *Coleman v. Pross*, 219 Va. 143 (1978). *Coleman* involved the Attorney General filing a mandamus petition pursuant to statutory authority when the Comptroller entertained doubts about the constitutionality of the submission of proposed constitutional amendments to the voters. The case now before us, however, does not involve a challenge by the executive branch pursuant to statutory authority. *Coleman* did not apply (or even cite) *Scott*'s discretionary separation-of-powers principles. Finding it unnecessary to expound upon hypothetical scenarios that may arise in future cases, we limit our application of *Scott* to the sui generis circumstances of the present case.

It cannot be overstated that *Scott* focused only on the timing of the exercise of judicial injunctive remedies — not on a court's constitutional power of judicial review. To be sure, *Scott* emphasized that "[t]he judiciary department has the power, and it is its duty, to pass upon the validity of a constitutional enactment when put in force, as well as upon the validity of an act of the legislature regularly passed and put in effect." *Id.* at 304; *see also* Stephen R. McCullough, Virginia Constitutional Law § 9.03[9][c], at 267 (2025 ed.). If the electorate rejects the proposed amendment, any pending legal proceedings will be dismissed as moot. *See Scott*, 114 Va. at 304. If the electorate approves the proposed amendment, we then must exercise our constitutional duty to review lower courts' declaratory judgments[4] before us on appeal and address de novo what equitable remedies, if any, are appropriate. With these principles in view, we grant the motion to stay the de facto preliminary injunction issued by the circuit court in this case that enjoins or interferes with the holding of an election.

### III.

*Scott* counsels that we stay the circuit court's de facto preliminary injunction. Our appellate stay, however, implies no rejection of the circuit court's declaratory judgments in *Scott v. McDougle*, Record No. 260127, which are still pending review in our Court, nor of the legal challenges asserted by complainants in the present case that have yet to be ruled upon by the lower court. It would be a perilous mistake to infer from our application of *Scott* that these holdings and claims fail any aspect of the "likelihood of success" criterion in Rule 3:26(d)(i). In the absence of *Scott*, the de facto preliminary injunction may have survived our review solely under Rule 3:26(d).

---

[4] *See* Code § 8.01-184. "The Declaratory Judgment Act created an intermediate tier of judicial power between the open-gate response to fully accrued claims and the closed-gate response to anything less than that." *Ames Ctr., L.C. v. Soho Arlington, LLC*, 301 Va. 246, 253 (2022); *see also* Kent Sinclair, Sinclair on Virginia Remedies § 4-1[A], at 4-2 (5th ed. 2016). "When rendered, declaratory judgments are '*binding* adjudications of right.'" Sinclair, *supra*, § 4-1[A], at 4-4 (emphasis in original) (citation omitted). Declaratory judgments can be enforced through both prohibitory and mandatory injunctions. *See id.* § 4-4[B], at 4-19. A court, however, "has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Zwickler v. Koota*, 389 U.S. 241, 254 (1967). For these reasons, *Scott*'s limitation on enjoining the holding of an election does not foreclose a court's duty to issue a declaratory judgment regarding the validity of that election.

In the first case appealed to this Court, *Scott v. McDougle*, the circuit court entered declaratory judgments on several legal challenges to the proposed constitutional amendment, and those judgments are currently pending review in this Court. In those declaratory judgments, the circuit court held:

- The General Assembly violated its own rules by improperly expanding the scope and purpose of the 2024 Special Session to consider and pass the proposed constitutional amendment, and thus, the first passage of the proposed constitutional amendments is void ab initio.

- Even if the General Assembly's first passage of the proposed constitutional amendment on October 31, 2025, were valid, no "next general election of members of the House of Delegates," *see* Va. Const. art. XII, § 1, occurred after that first passage because the election began on the first day of early voting on September 19, 2025.

- Even if the General Assembly's first passage of the proposed constitutional amendment were valid and even if "election" is defined narrowly as only Election Day and not the entire period of voting, the General Assembly failed to comply with the statutory notice requirement, *see* Code § 30-13 (requiring the Clerk of the House of Delegates to provide copies of the proposed constitutional amendment to every circuit court clerk to post at the front door of the courthouse at least three months prior to the "next ensuing general election of members of the House of Delegates").

In the present case, different plaintiffs again assert the second challenge above as a declaratory judgment claim, and their complaint pleads several additional declaratory judgment claims that were not raised or ruled upon in the first case:

- The ballot language passed by the General Assembly to be submitted to the voters regarding the proposed constitutional amendment is misleading and violates the Submission Clause of Article XII, Section 1 of the Constitution of Virginia because it submits a different question on the referendum ballot than the language of the constitutional amendment passed by the General Assembly.

- Article XII, Section 1 of the Constitution of Virginia requires the proposed constitutional amendment to be submitted to the voters "not sooner than ninety days after final passage by the General Assembly." Assuming that the second passage of the proposed constitutional amendment on January 16, 2026, was valid, the 90-day requirement before submission to the voters

5

has been violated because early voting is scheduled to begin on March 6, and 90 days after January 16 would not occur until April 16.

- HB 1384 violates the Form of Laws Clause of Article IV, Section 12 of the Constitution of Virginia, which prohibits the General Assembly from passing laws that "embrace more than one object, which shall be expressed in its title." HB 1384 addresses multiple objects by (i) providing for appropriations of public revenues, (ii) establishing the ballot question and procedures for submitting the proposed constitutional amendment to the voters, (iii) repealing Code § 30-13, and (iv) transferring venue to the Richmond Circuit Court for civil actions challenging the proposed constitutional amendment. Only the first three of these objects are referenced in the title of the bill.

The circuit court's declaratory judgment holdings in *Scott v. McDougle* and the new claims asserted in the present case involve weighty assertions of invalidity against the process employed by the General Assembly in an effort to submit a proposed constitutional amendment to the citizens of the Commonwealth. These issues are of grave concern to the Court. But consistent with *Scott*, we offer no opinion on the ultimate resolution. It is the process, not the outcome, of this effort that we may ultimately have to address. Issuing an injunction to keep Virginians from the polls is not the proper way to make this decision.

IV.

In sum, we stay the de facto preliminary injunction entered by the circuit court in this case.[5] The circuit court on remand shall promptly bring the case to closure and enter final judgment.

This order shall be certified to the Circuit Court of Tazewell County.

A Copy,

Teste:

Clerk

---

[5] There are several other outstanding motions that have been filed in this case. We grant the Motion to Intervene filed by Don Scott, Louise Lucas, and Scott Surovell. The Motion for Administrative Stay and Vacatur, the Motion to Consolidate *Scott* and *Koski*, and any other requested relief in the Petition for Review are denied at this time pending the entry of a final declaratory judgment by the circuit court in *Koski*.