ERIE INSURANCE GROUP

v.

NETTIE JANE HUGHES, ET AL.

Record No. 891377

June 8, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, Lacy, JJ.,
and Poff, Senior Justice

*Jay T. Swett (Laura C. Rublee; Dayna B. Matthew; McGuire, Woods, Battle & Boothe*, on briefs), for appellant.

*L. B. Chandler, Jr. (Chandler, Franklin & O'Bryan*, on brief), for appellee Nettie Jane Hughes.

*Richard H. Milnor (John W. Zunka; Taylor & Zunka*, on brief), for appellee Allstate Insurance Company.

SENIOR JUSTICE POFF delivered the opinion of the Court.

This is an appeal by an automobile liability insurance carrier from a declaratory judgment rejecting its denial of coverage of a claim for personal injuries sustained in a two-car collision. One of the vehicles was a Buick sedan registered to Nettie Hughes and operated by John Critzer. The other was a Plymouth registered to Ruby Viar and operated by Robert Joe Kendrick, Jr. One of the passengers in the Buick was killed in the collision; Hughes and four other passengers were injured.

Erie Insurance Group had issued Viar a liability insurance policy providing bodily injury liability limits of $250,000 per person and $500,000 per accident. Allstate Insurance Company had issued Hughes a policy providing uninsured motorist limits of $50,000 per person and $100,000 per accident. Hughes notified both insurance companies of her claim. Both denied coverage. Naming Erie and Allstate as parties defendant, Hughes filed a motion for judgment against Erie and Allstate praying for "a Judgment declaring and adjudicating the prospective rights and duties of plaintiff and the defendants under the provisions of their respective insurance polices concerning coverage of each policy". Neither Viar, the owner of the Plymouth, nor Kendrick, the driver, was named as a party to this action.

Erie and Allstate filed answers denying liability. As affirmative defenses, Erie denied coverage on both the Plymouth and its driver, alleging (1) that the car was not an "owned automobile" insured under Viar's policy and (2) that Kendrick operated the Plymouth without permission of the named insured.

The trial court, sitting without a jury, heard evidence *ore tenus*. The record shows that Viar had acquired the Plymouth as a replacement for a disabled car she had loaned to her stepfather, Sandy Gibson. Although Viar testified that she had notified Erie to that effect, the Plymouth was not listed as an insured automobile on the policy Erie renewed and delivered to Viar shortly before the collision with the Buick.

Viar said that she had authorized Gibson to drive the Plymouth but had forbidden him expressly to allow Kendrick to do so because she knew that Kendrick was an irresponsible driver. Gibson acknowledged that he had permitted Kendrick, a grandson he had reared, to use the Plymouth to run short errands, but Viar testified that she had never seen him drive the car.

In the spring of 1987, however, Viar learned that Kendrick had driven the Plymouth to the local market. Viar instructed Gibson to remove the license tags from the car. Gibson promised he would "never let [Kendrick] do it again" if she would "leave the tags on the car". The tags remained on the Plymouth and, so far as the record reveals, Kendrick did not drive it again until August 15, 1987 when he became involved in a head-on collision with the Buick.

By judgment entered April 26, 1989, the trial court declared that Viar has "impliedly consented to . . . Kendrick's use of the

1975 Plymouth sedan", that "the 1975 Plymouth sedan was an 'owned automobile' under the terms of [Erie's] Policy", and that coverage under that policy "applies in this case". Erie filed a motion to set aside the judgment for lack of subject-matter jurisdiction. The court vacated the judgment pending consideration of that motion. By final judgment entered August 11, 1989, the court reinstated the original judgment, and we awarded Erie an appeal.[1]

On appeal, Erie renews its challenge to the subject-matter jurisdiction of the trial court.[2] In response, Hughes and Allstate rely principally upon our decision in *Reisen* v. *Aetna Life and Casualty Co.*, 225 Va. 327, 302 S.E.2d 529 (1983). There, a tortfeasor's liability insurer, faced with a personal injury claim, filed a motion for declaratory judgment declaring no coverage. The insurer named as defendants its insured, the injured person, and the latter's uninsured motorist insurance carrier. Confirming the jury's finding that the tort was intentional as alleged, the trial court entered judgment declaring no coverage. Rejecting the appellant's argument on appeal, we held that "there was a justiciable controversy ripe for adjudication within the meaning of our declaratory judgment statutes, and that the trial court did not abuse its discretion in exercising jurisdiction over the coverage matter." *Id.* at 334, 302 S.E.2d at 532.

We based our holding upon the common-law rule applied in *Aetna* v. *Price*, 206 Va. 749, 761, 146 S.E.2d 220, 228 (1966). Because the tort claimant in *Reisen* had made an offer to settle for a sum less than the damages claimed and within the limits of the insurance policy, "the insurer had the duty to exercise good faith in dealing with the offer of compromise, keeping in mind the insured's interests and its own." *Reisen*, 225 Va. at 335, 302 S.E.2d at 533. Said differently, apart from and in addition to the insurer's contractual obligation to defend and indemnify its insured, the insurer, faced as it was with the claimant's offer, had a common-law duty, one measured in terms of good faith conduct, to protect its insured against the threat of a judgment in excess of

---

[1] Trial of the tort actions, filed following entry of the declaratory judgment by the decedent's representative and the several persons injured in the accident, have been suspended pending this appeal.

[2] Erie also contends that the trial court erred in finding that the Plymouth was an "owned automobile" and "in concluding that Kendrick had implied permission . . . because Viar . . . specifically prohibited Kendrick from driving the car." We need not consider these questions.

policy limits. The insured had a corresponding right. That duty and that right came into conflict when the tort claimant made the offer and the insurer denied coverage. Clearly, the coverage dispute underlying that conflict was "a justiciable controversy ripe for adjudication within the meaning of our declaratory judgment statutes". *Id.* at 334, 302 S.E.2d at 532.

■ Relying upon its reading of *Reisen*, Allstate invokes the statutory mandate that the declaratory judgment statutes "be liberally interpreted and administered with a view to making the courts more serviceable to the people." Code § 8.01-191. Allstate contends that the statutory remedy is justified "in the interests of judicial economy and common sense". Joining in that argument, Hughes explains that she "used the mechanism of declaratory judgment to reduce the burden upon the judicial system and to seek a clear and binding adjudication of the rights and liabilities of Erie Insurance Company and Allstate Insurance Company to plaintiff."

Obviously, use of the procedure in *Reisen* served the cause of judicial economy. This was because in that case all potentially adverse parties were before the court at trial and on appeal. But in this case, as Erie points out, Viar and Kendrick were never made parties to the declaratory judgment proceeding and, consequently, are not parties to this appeal. And, as Hughes' argument implicitly recognizes, the trial court's adjudication was "clear and binding" only on Erie and Allstate.

If we were to uphold the trial court's judgment on the jurisdictional question but should reverse its declaration on the question of coverage, neither Viar nor Kendrick would be bound, either by the judgment below or by our decision. Hence, as a defendant in the several tort actions, each would have standing to file a declaratory judgment suit or an action *ex contractu* against Erie claiming coverage.

■ Such a claim could demand all of the rights of coverage, including the right to a defense, the right to Erie's good faith dealing with respect to any compromise within policy limits offered by any claimant, and the right to indemnity on account of any judgment within policy limits entered in favor of any of the several plaintiffs in the tort actions. In such event, an application of the declaratory judgment statutes would not make "the courts more serviceable to the people" but, instead, would tend to defeat rather than to promote the cause of judicial economy. While reaf-

firming the principles applied in *Reisen,* we hold that the decision there is not controlling here.

As provided in Article 18 of Code Title 8.01, circuit courts are empowered to make certain "binding adjudications of right" and to do so "whether or not consequential relief is, or at the time could be, claimed". Code § 8.01-184. Courts may exercise such power, however, only "[i]n cases of actual controversy" involving "actual antagonistic assertion and denial of right." *Id.*

■ Erie acknowledges that the motion for judgment invoking the trial court's jurisdiction alleged a controversy over coverage. But declaratory judgment does not lie just because the parties disagree. *See Aetna Life Insurance Co.* v. *Haworth,* 300 U.S. 227, 240-41 (1937). To vest the court with jurisdiction, the controversy must be justiciable. *City of Fairfax* v. *Shanklin,* 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964). "Enactment of the declaratory judgment statutes did not vest the courts with authority to render advisory opinions, decide moot questions, or answer merely speculative inquiries." *Reisen,* 225 Va. at 331, 302 S.E.2d at 531 (citation omitted). To the contrary, their purpose is "to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights". Code § 8.01-191.

■ Courts cannot afford such "relief" when they lack the power to bind all parties to the controversy. "Actions or opinions are denominated 'advisory' . . . where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive." E. Borchard, *Declaratory Judgments* 35 (2d ed. 1941). The dispute "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character". *Haworth,* 300 U.S. at 241. Without Kendrick and Viar as parties defendant, this action cannot be sufficiently conclusive.

Finding no justiciable controversy within the definition of our declaratory judgment statutes, we will sustain Erie's jurisdictional challenge, vacate the judgment below, and dismiss the motion for declaratory judgment.

*Vacated and dismissed.*