Present:  All the Justices

DENNIS H. TREACY, ET AL.

v.  Record No. 971773    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          June 5, 1998
SMITHFIELD FOODS, INC.

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Kenneth E. Trabue, Judge Designate

The dispositive issue in this appeal from a declaratory judgment decree is whether there was a justiciable controversy between the parties.

This case involves permits and an order issued by the State Water Control Board (Board) regulating the discharge of wastewater in conjunction with the Federal Water Pollution Control Act of 1972, 33 U.S.C. § 1251 et seq. (Clean Water Act, or the Act).  The Act established the National Pollutant Discharge Elimination System (NPDES) as a means of regulating discharges into the United States' navigable waters.  Id.

The Clean Water Act prohibits the discharge of pollutants into such waters, except in compliance with a NPDES permit.  33 U.S.C. §§ 1311 and 1342.  Under the Act, the states have the primary responsibility for establishing and administering permit programs within their respective boundaries.  Although the states have authority to adopt their own water quality standards and effluent limitations that are more stringent than the federal requirements, the states may not enforce requirements

that are less restrictive than those required by the Clean Water Act.  See 33 U.S.C. §§ 1342 and 1370.

The Commonwealth of Virginia, through the Board, is authorized by the Clean Water Act to issue permits that have the same force and effect as NPDES permits.  See 40 Fed. Reg. 20,129 (May 8, 1975).  The permits issued by the Board are called "Virginia Pollutant Discharge Elimination System permits" (VPDES permits).  See 9 VAC 25-31-10.[1]

Smithfield Foods, Inc. (Smithfield) has subsidiary corporations that own and operate two pork processing plants in Isle of Wight County.  In 1986, the Board issued a VPDES permit that regulated the wastewater Smithfield discharged into the Pagan River.  However, in 1988, the Board developed a "Policy for Nutrient Enriched Waters" (Policy) that required the inclusion of a limitation on phosphate discharges in all permits regulating wastewater discharged into nutrient enriched waters. 9 VAC 25-40-10 et seq.

Based on this Policy, the Board modified Smithfield's permit in 1990 (1990 Permit), adding a compliance schedule for the construction of facilities that would meet a monthly average effluent limitation of 2.0 mg/l of phosphorous.  The 1990 Permit also limited total kjeldahl nitrogen (TKN), a measure of the

---

[1]"VAC" refers to "Virginia Administrative Code."

amount of ammonia and other unoxidized nitrogen compounds in wastewater discharge. Smithfield filed an administrative appeal challenging the phosphorous standards set forth in the Policy and the 1990 Permit.

To resolve its dispute with the Board, Smithfield consented to the Board's issuance of an administrative order pursuant to Code § 62.1-44.15(8a)-(8d). In this May 1991 "Special Order Issued to Smithfield Foods, Inc." (Special Order), Smithfield agreed to notify the Board within a specified time of its commitment either to connect its facilities to the Hampton Roads Sanitation District (HRSD) wastewater plant or to upgrade its facilities to meet the phosphorous standard contained in the Special Order. The Special Order also provided that until Smithfield satisfied this requirement, Smithfield would comply with "the interim effluent limitations in Appendix A," which were less stringent than the TKN limitations in the 1990 Permit.

Upon issuance of the Special Order, Smithfield agreed to dismiss its pending appeal of the phosphorous standards contained in the Policy and the 1990 Permit. One month later, Smithfield notified the Board of its commitment to connect its wastewater plants to the HRSD.

In 1991, the Board also began the process of renewing the 1990 Permit and presented a proposed draft permit to Smithfield for its review. Smithfield expressed concern that the draft

3

permit contained the same effluent requirements included in the 1990 Permit, which Smithfield believed were inconsistent with the terms of the Special Order. In response, Debra L. Thompson, an environmental engineer with the State Water Control Board, wrote a letter to Lawrence D. Lively, Director of Environmental Affairs at Smithfield, confirming that "[a]ny special order agreements relative to compliance with water quality standards, the Permit regulation and associated studies that have been approved by the Board take precedence over the VPDES Permit."

In 1992, the Board issued Smithfield a renewal permit (1992 Permit). The 1992 Permit contained the phosphorous and TKN standards previously set forth in the 1990 Permit.

In October 1996, the Board and the Director of the Department of Environmental Quality filed an amended bill of complaint for the Commonwealth alleging that Smithfield committed numerous permit violations, as well as violations of the Special Order.[2] In the amended bill of complaint, the Commonwealth stated in part:

> 6. The wastewater discharges are and have been further governed as to total Kjeldahl nitrogen ("TKN") by an order issued by the State Water Control Board under the authority of Code § 62.1-44.15(8a) on May 13, 1986 and amended on January 25, 1988 and March 21, 1990 (the "Order").

> 7. The wastewater discharges are and have been further governed as to total phosphorous by the amendment to the

---

[2]Although the Special Order was amended in November 1994, the changes are not relevant to the present case.

4

Order on March 21, 1990 and a further amendment on November 6, 1990. The Order was superseded by an order of May 9, 1991 that was amended on November 8, 1994.

In December 1996, the United States Environmental Protection Agency (EPA) filed suit against Smithfield in the United States District Court for the Eastern District of Virginia seeking penalties under the Clean Water Act for violations of certain effluent standards, including the phosphorous and TKN standards contained in the 1992 Permit. See United States v. Smithfield Foods, Inc., 965 F. Supp. 769 (E.D. Va. 1997). On March 25, 1997, John R. Butcher, Assistant Attorney General of Virginia, wrote a letter to the United States Department of Justice regarding this federal action against Smithfield, stating in relevant part:

Virginia does not take the position that either the [Special Order] of the State Water Control Board or the pendency of our enforcement action in state court precludes a federal enforcement action against Smithfield. While Smithfield may take this position, any preclusion is a matter of federal law to be determined in the appropriate federal forum.

In April 1997, Smithfield filed a cross-bill in the present case seeking a declaratory judgment that the Special Order revised, superseded, and replaced the 1990 and 1992 Permits. In its cross-bill, Smithfield asserted that in issuing the Special Order, the Board entered into a contract requiring Smithfield only to comply with the phosphorous and TKN standards specified in the Special Order, rather than the standards set forth in the

5

1990 Permit.  Smithfield asserted that the Board breached this alleged contract when the Board issued the 1992 Permit and when Butcher wrote the March 25, 1997 letter to the Department of Justice.  Smithfield requested entry of a decree (1) declaring that the Special Order relieved Smithfield from complying with the phosphorous and TKN standards in the 1990 and 1992 Permits because Smithfield had elected to connect to the HRSD treatment system, (2) modifying the 1992 Permit to conform its provisions to those of the Special Order, and (3) enjoining the Commonwealth and the United States from enforcing any provisions of the 1990 and 1992 Permits that are inconsistent with the terms of the Special Order.

After the Commonwealth requested and was granted a nonsuit of the bill of complaint, the trial court conducted a hearing on the cross-bill.  During the hearing, counsel for the Commonwealth stated,

> Judge, we have said it I think four or five times in pleadings, we wrote it down and we signed it because we meant it and I'll say it to you again looking you right in the eye, that as to phosphorous and the State Water Control Board, this company's behavior is regulated by the [Special Order] and not by the permit.

The chancellor agreed that "[e]ven after the Board issued the 1992 Permit to Smithfield, the Commonwealth's position remained that the 1991 [Special] Order constituted the Commonwealth's only regulatory command to Smithfield with

6

respect to phosphorous, notwithstanding the apparently contradictory language in the [1992] Permit." Nevertheless, the chancellor issued a declaratory judgment holding, among other things, that (1) the Commonwealth had no authority to impose phosphorous-related standards on Smithfield that were inconsistent with the terms of the Special Order, and (2) the phosphorous discharge standards in the 1992 Permit "shall not be deemed or construed to impose any obligations on Smithfield that are inconsistent with the [Special] Order."

On appeal, the Commonwealth argues that the trial court erroneously issued an advisory opinion because there was no "actual controversy" between the Commonwealth and Smithfield. The Commonwealth contends that it consistently has agreed with Smithfield that the terms of the Special Order take precedence over the terms of the 1990 and 1992 Permits.

The Commonwealth notes that it has never sought to enforce the more stringent phosphorous standards set forth in the 1990 and 1992 Permits, and that the only violations pertaining to TKN alleged in the nonsuited bill of complaint arose under the terms of the Special Order. The Commonwealth also contends that the March 25, 1997 letter to the Department of Justice did not depart from that position, but merely stated the Commonwealth's position that the issue whether the Special Order takes precedence over the permits for purposes of the EPA action in

the federal district court is a question of federal law.  Thus, the Commonwealth asserts that the only existing controversy is between Smithfield and the EPA.

In response, Smithfield contends that the Special Order was a contract in which the Commonwealth and Smithfield agreed that Smithfield would be governed by the requirements of the Special Order, rather than by the terms of the 1990 and 1992 Permits.  Smithfield contends that the Commonwealth breached this contract by sending the March 1997 letter to the Department of Justice and by issuing the 1992 Permit.  Smithfield argues that these actions created a controversy between the Commonwealth and Smithfield regarding the effect of the Special Order and the 1992 Permit.  We disagree with Smithfield's arguments and hold that Smithfield was not entitled to a declaratory judgment because it failed to demonstrate a justiciable controversy between the parties to this suit.

The purpose of the Declaratory Judgment Act, Code §§ 8.01-184 through -191, is to provide relief from the uncertainty arising out of controversies over legal rights.  Code § 8.01-184; Erie Ins. Group v. Hughes, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990); Reisen v. Aetna Life & Cas. Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983).  The trial court's authority to enter a declaratory judgment is discretionary and must be

exercised with great care and caution.  Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970).

Under the Declaratory Judgment Act, the circuit courts have the authority to make "binding adjudications of right" in cases of "actual controversy" when there is "antagonistic assertion and denial of right."  Code § 8.01-184; Blue Cross & Blue Shield v. St. Mary's Hosp., 245 Va. 24, 35, 426 S.E.2d 117, 123 (1993); Erie, 240 Va. at 170, 393 S.E.2d at 212; Reisen, 225 Va. at 331, 302 S.E.2d at 531.  To be "justiciable," the controversy must involve specific adverse claims that are based on present, not future or speculative, facts that are ripe for judicial assessment.  Id.; City of Fairfax v. Shanklin, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964).  Thus, the Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative.  St. Mary's, 245 Va. at 35, 426 S.E.2d at 123; Erie, 240 Va. at 170, 393 S.E.2d at 212; Reisen, 225 Va. at 331, 302 S.E.2d at 531.

The present case does not involve an actual controversy between the Commonwealth and Smithfield regarding the effect of the Special Order.  The October 1991 letter from the State Water Control Board to Smithfield plainly stated that any special order agreements concerning compliance with water quality standards took precedence over the terms of the VPDES permit.

9

In its bill of complaint, the Commonwealth acknowledged that the Special Order governed Smithfield's wastewater discharge of TKN and total phosphorous. This position was underscored by the fact that the only TKN violations alleged in the bill of complaint were violations of the Special Order, and there were no violations alleged concerning the phosphorous standard.

During the hearing, the Commonwealth's counsel emphasized that "as to phosphorous and the State Water Control Board, [Smithfield's] behavior is regulated by the [Special] [O]rder and not by the permit . . . There is no dispute between the Commonwealth and Smithfield Foods, Incorporated. The dispute is with EPA in the [f]ederal case."

We find no merit in Smithfield's argument that the 1992 Permit and the Commonwealth's March 1997 letter to the Department of Justice created a controversy between the Commonwealth and Smithfield on which a declaratory judgment could be based. Although certain terms of the 1992 Permit were more restrictive than the standards contained in the Special Order, the Commonwealth uniformly had acknowledged that, in its enforcement of phosphorous and TKN violations, the terms of the Special Order took precedence over the terms of the 1992 Permit.

The March 1997 letter to the Department of Justice did not constitute a change in the Commonwealth's position. In that letter, the Commonwealth merely stated the obvious proposition

10

that federal law governed the EPA enforcement action in federal district court, including any issue whether that action was precluded by the terms of the Special Order.

Nevertheless, citing Criterion Insurance Company v. Grange Mutual Casualty Company, 210 Va. 446, 171 S.E.2d 669 (1970), Smithfield argues that the chancellor did not render an advisory opinion because Smithfield's liability to a third party, the EPA, depended on the effect of the Special Order binding the Commonwealth and Smithfield.  However, Criterion does not support Smithfield's argument.  In that declaratory judgment proceeding, a controversy existed between two insurance carriers to determine which carrier was obligated to defend actions pending against an owner and an alleged permissive user of an automobile.  Id. at 449, 171 S.E.2d at 671.  Thus, we reject Smithfield's argument because a declaratory judgment proceeding may not be maintained against a party with whom there is no controversy in order to resolve a controversy existing with one not a party to the proceeding.  Here, the absence of a controversy between the Commonwealth and Smithfield is fatal to Smithfield's cross-bill and resulted in the chancellor's erroneous issuance of an advisory opinion.

For these reasons, we will reverse and vacate the trial court's decree and enter final judgment in favor of the Commonwealth.

11

<u>Reversed and final judgment.</u>