## CIRCUIT COURT OF THE CITY OF RICHMOND

Pony Farm Associates,
L.L.P., et al.

v.

City of Richmond

August 6, 2003

Case No. HS-654-4

BY JUDGE RANDALL G. JOHNSON

In this action, the owners of a tract of land challenge the City of Richmond's designation of two streams on the land as "tributary streams" and the property surrounding the streams as Resource Protection Areas ("RPAs") under the city's Chesapeake Bay Preservation Act Ordinance. An evidentiary hearing was held on July 9.

The property in question is located on the southeast corner of Forest Hill Avenue and Chippenham Parkway in Richmond. The property is bisected laterally by the tracks of the Norfolk Southern Railroad, which divide the property into two tracts: Parcel A, which is the northernmost tract, and Parcel B. Parcel A contains two streams that merge together just below the railroad tracks bisecting the property. The resulting single stream runs through Parcel B and to the Powhite Creek well outside the boundaries of plaintiff's land. Plaintiffs have contracted with a developer to develop Parcel A as a sixty-acre retail center to be known as the Shops at Stratford Hills. Although the plans for development as they now exist are not affected by the city's designation, future development may be. No development plans presently exist for Parcel B.

The Chesapeake Bay Preservation Act, Va. Code §§ 10.1-2100 *et seq.* (the "Act"), generally requires local jurisdictions, such as Richmond, to protect specific bodies of water, including "tributary streams" as defined by the Act,

by surrounding them with zones in which development is prohibited or restricted. Prior to 2002, state regulations implementing the Act defined a tributary stream as a stream identified as perennial on the United States Geological Survey 7-1/2 minute topographic quadrangle map ("USGS map"). VA Chesapeake Bay Preservation Area Designation and Management Regulations, 9 VAC 10-20-40 (2001).[1] Although neither of the streams on plaintiffs' property was so designated on the USGS map, plaintiffs were informed in October 2000 that those streams had been designated by the city's Department of Community Development as perennial, that the same Department had also designated the area around the streams as RPAs, and that development could proceed only in conformity with the restrictions applicable under the Act. Plaintiffs appealed the Department's designations to the city's Board of Zoning Appeals, which affirmed the Department's action. Plaintiff's then appealed to this court. In a written opinion dated September 24, 2001, the court noted that Va. Code § 10.1-2109(A) provides:

> Counties, cities, and towns in Tidewater Virginia[2] shall use the criteria developed by the [Chesapeake Bay Local Assistance] Board to determine the extent of the Chesapeake Bay Preservation Area within their jurisdictions. Designation of Chesapeake Bay Preservation Areas shall be accomplished by every county, city, and town in Tidewater Virginia not later than twelve months after adoption of criteria by the Board.

The court also noted that pursuant to that statute, § 32-920.2 of the Code of the City of Richmond provides, in pertinent part:

> *Designation of the Resource Protection Area.* The Resource Protection Area is that area generally shown as such on the official map on file in the Bureau of Permits and Inspections entitled "Chesapeake Bay Preservation Areas" as such may be amended from time to time by City Council, which map is incorporated in this Code by reference and made a part hereof.

---

[1] "VAC" refers to the Virginia Administrative Code, which contains regulations adopted by administrative agencies of the Commonwealth pursuant to statutory authority.

[2] Under the Act, the term "Tidewater Virginia" includes the City of Richmond. Va. Code § 10.1-2101.

Finding that the official map referred to in § 32-920.2 of the City Code did not show the subject portion of plaintiff's property as an RPA and also finding that City Council had not amended the map to designate that area as such, the court reversed the city's action and set aside the designation. *See* Case No. LM-880-4, *BFML Associates, L.L.L.P. v. City of Richmond Board of Zoning Appeals*, final order entered September 24, 2001.

By letter dated January 16, 2002, the city's Department of Community Development informed plaintiffs that it was recommending that the official map referred to in § 32-920.2 of the City Code be amended to designate the streams on plaintiffs' property as perennial and the areas around them as RPAs. On January 22, 2002, the city's Planning Commission approved the recommendation, and on March 25, 2002, City Council adopted an ordinance amending the map accordingly. Plaintiffs filed this action on April 17, 2002. It is plaintiffs' position that City Council's amendment of the map violated the order of this court entered in the previous action. Plaintiffs also argue that City Council's amendment of the map is not authorized by state law. The court rejects plaintiffs' first argument, but agrees with the second.

The court's September 2001 order decided the narrow question of whether the city's Department of Community Development, or an employee of such department, had the authority to designate a stream as perennial or the area around such stream as an RPA. After making the findings just discussed, the court held that it did not. Only City Council could make such designations:

> [City Code] Section 32-920.2 provides that RPAs must be shown on the official map as amended by City Council. The Department of Community Development and the Permits and Engineering Services Administrator can neither amend the official map nor make any other designations, other than establishing the boundaries of an existing RPA. Their attempt to do so in this case was improper. The [Zoning] Board's decision approving that designation will be reversed.

Written Opinion in Case No. LM-880-4, at 5.

That is all the court held. The court did not hold that City Council was not authorized to amend the map, only that the Department of Community Development and its employees were not. The court was not confronted with, nor did it address, the procedures or requirements involved if City Council were to amend the map. Any discussion by the court of such procedures or

requirements would have been advisory and prohibited. *See, e.g., Hoffman Family v. Mill Two Assoc. Partnership,* 259 Va. 685, 692 (2000); *Treacy v. Smithfield Foods,* 256 Va. 97, 103-04 (1998); *Reisen v. Aetna Life & Cas. Co.,* 225 Va. 327, 331 (1983). Thus, City Council's action in amending the map did not violate any provision of this court's order of September 24, 2001.

Turning now to the real issue before the court, the question is whether City Council's amendment to the Chesapeake Bay Preservation Area map under City Code § 32-920.2 violates state law. As noted earlier, state regulations implementing the Act prior to 2002 defined a tributary stream as a stream identified as perennial on the USGS map. 9 VAC 10-20-40 (2001). An RPA had to be adjacent to a perennial stream. 9 VAC 10-20-80(B)(2). Since the streams on plaintiffs' property were not, and still are not, designated as perennial on the USGS map, plaintiffs argue, and the court holds, that the city had no authority under the pre-2002 regulations to designate the streams as perennial.

Effective March 1, 2002, however, the state regulations were amended to provide that a municipality may determine whether streams are perennial in one of two ways: either by reference to the USGS map, as the pre-amendment regulations provided, or through the use of consistently-applied scientific criteria of perennial flow. Specifically, 9 VAC 10-20-80(D) (2002) now provides:

> For the purpose of generally determining whether water bodies have perennial flow, local governments may use one of the following methods as long as the methodology is adopted into the local program and applied consistently: (i) designation of water bodies depicted as perennial on the most recent U.S. Geological Survey 7-1/2 minute topographic quadrangle map (scale 1:24,000) or (ii) use of a scientifically valid system of in-field indicators of perennial flow. However, site-specific determinations shall be made or confirmed by the local government pursuant to 9 VAC 10-20-105.

Also as noted above, the first notification plaintiffs received of the city's designations after this court's September 2001 decision was in a letter from the Department of Community Development dated January 16, 2002. The Planning Commission approved the recommendation on January 22, 2002. Both of those actions took place before the regulations were amended; that is, at a time when the designation could be made only if the streams were shown

to be perennial on the USGS map. They were not shown as such. While City Council's amendment of the map took place after the effective date of the amendment to the regulations, there was no indication, either at the time of City Council's amendment in March 2002 or at the time of the evidentiary hearing in this court on July 9, 2003, that the city had developed or used "a scientifically valid system of in-field indicators of perennial flow," as required under the amended regulation, or that such system, if it had been developed and used with respect to the property at issue here, had been "adopted into the local program and applied consistently," also as required by the amended regulation. The only thing we do know is that in this particular case, the city determined that the subject streams are perennial. The regulations, both before and after the 2002 amendment, require more. Because the city failed to abide by those regulations, its amendment of the map to designate a portion of plaintiffs' property as an RPA was improper.

Finally, the court rejects the city's argument that, even in the absence of the Chesapeake Bay Preservation Act, it has the authority under its general zoning power to take the action it did. By enacting the Act, the General Assembly has set out the procedures applicable to determining whether a stream is or is not perennial and how an RPA can be designated. If those procedures are to mean anything, they cannot be altered or amended by a municipality. Otherwise, why have the Act at all? Indeed, Va. Code § 1-13.17 provides:

> When the council or authorities of any city or town, or any corporation, board, or number of persons, are authorized to make ordinances, bylaws, rules, regulations, or orders, it shall be understood that the same must not be inconsistent with the Constitution and laws of the United States or of this Commonwealth.

Virginia Code § 10.1-2100 requires that cities such as Richmond "establish programs, *in accordance with criteria established by the Commonwealth,* that define and protect certain lands, hereinafter called the Chesapeake Bay Preservation Areas." Emphasis added. By enacting an ordinance that designated two streams on plaintiffs' property as perennial and the area around those streams as RPAs based on criteria not authorized by state regulations adopted in accordance with state statutes, that is, criteria established by the Commonwealth, Richmond's City Council overstepped its authority and acted *ultra vires.* That action will now be reversed.