# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Bruce Salzman

v.

Ivaylo K. Kanchev,
Dairyland Insurance Co.,
Progressive Specialty
Insurance Co.,
and Allstate Fire and
Casualty Insurance Co.

February 4, 2010

Case No. (Civil) CL09-1566

BY JUDGE V. THOMAS FOREHAND, JR.

This matter is a declaratory judgment action filed pursuant to Virginia Code § 8.01-184 and is before the Court on cross-motions for summary judgment filed by plaintiff Bruce Salzman and defendant Progressive Specialty Insurance Company ("Progressive"). The parties agree that there are no material facts in dispute and that no issues exist to be determined by a trier of fact. The Court has considered the pleadings and Motions for Summary Judgment, the briefs in support and in opposition filed by counsel, as well as oral arguments of counsel heard on December 18, 2009.

*Facts*

On October 11, 2007, Salzman was operating a motorcycle traveling east on Military Highway in the City of Chesapeake. Salzman collided with defendant Ivaylo Kanchev's vehicle, which was turning left from Parkview Drive onto Military Highway. Salzman sustained injuries as a result of the accident, and incurred medical bills exceeding $50,000.00.

There are three motor vehicle insurance policies applicable to the instant case: (1) the Allstate Fire & Casualty Insurance ("Allstate") policy of defendant Kanchev, which provided bodily injury coverage limits of $50,000.00 per person and $100,000.00 per accident; this policy provides motor vehicle liability insurance for the subject accident and is the primary coverage; (2) the Dairyland Insurance policy of plaintiff Salzman, which insured the motorcycle on which he was riding at the time of the accident; this policy provided bodily injury coverage against uninsured/underinsured ("UM/UIM") motorists in the amount of $25,000.00 per person and $50,000.00 per accident; this policy insured only one vehicle, the Harley-Davidson motorcycle owned by Salzman; and (3) the Progressive Specialty Insurance policy of plaintiff Salzman, which provided bodily injury coverage against UM/UIM motorists in the amount of $50,000.00 per person and $100,000.00 per accident. This policy insured two vehicles, neither of which were involved in the subject accident.

The essential issue before the Court is whether language in the Progressive policy is unambiguous and successfully prohibits the "stacking" of the UM/UIM coverage for each vehicle listed on the policy, thereby limiting the available UIM coverage for Salzman to $50,000.00.

*Standard of Review*

Summary judgment is a "drastic remedy, available only when there are no material facts genuinely in dispute." *Fultz v. Delhaize Am., Inc.,* 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009). A trial court must "accept[] as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Id.*

"The filing of cross-motions for summary judgment does not, in itself, resolve the question whether material facts remain genuinely in dispute." *Town of Ashland v. Ashland Inv. Co.,* 235 Va. 150, 154, 366 S.E.2d 100, 103 (1988). The litigants' belief that the evidence is

"sufficiently complete to decide [a] case does not relieve the trial judge of the responsibility and duty to make an independent evaluation of the record on that issue. A court's duty to ascertain whether certain facts remain in dispute or whether there are sufficient facts to decide the question presented is not obviated by cross-motions for summary judgment." *Central Nat. Ins. v. Virginia Farm Bureau Ins.*, 222 Va. 353, 356, 282 S.E.2d 4, 6 (1981).

Upon analysis of the pleadings and upon consideration of the arguments submitted by counsel, the Court is of the opinion that this matter is proper for summary judgment as no material facts remain genuinely in dispute.

*Analysis*

Virginia Code § 38.2-2206(B) provides, in part:

If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:

1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;

2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;

3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured.

Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be proportioned as to their respective underinsured motorist coverages.

The liability coverage available to Salzman through defendant Kanchev's Allstate policy affords him the first layer of insurance protection. This policy provides $50,000.00 in liability coverage. Therefore, plaintiff's Dairyland policy, which insured the plaintiff's motorcycle, would be entitled to a full credit, or offset, against its potential UIM exposure in the amount of $25,000.00. The remaining $25,000.00

would be credited to Progressive, which would leave Progressive's potential UIM exposure at either $25,000.00 if the Court finds that the Progressive policy unambiguously prohibited the "stacking" of UIM coverage, or $75,000.00 if the Court finds that the Progressive policy is ambiguous and, therefore, unsuccessfully prohibited the stacking of UIM coverage.

The subject Progressive insurance policy was attached as Exhibit A to plaintiff's Motion for Summary Judgment and as Exhibit D to defendant Progressive's Motion for Summary Judgment. The portions of the policy that are pertinent to the instant case are as follows:

Part IV: PROTECTION AGAINST UNINSURED MOTORISTS
I. UNINSURED MOTORISTS COVERAGE
(Damages for Bodily Injury and Property Damage)
The Company will pay in accordance with Section 38.2-2206 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damages, caused by accident and arising out of the ownership, maintenance, or use of such uninsured motor vehicle. In accordance with Section 38.2-2206 of the Code of Virginia, the company is also obligated to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle as defined below, to the extent the motor vehicle is underinsured. . . .
II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and, while residents of the same household, the spouse of the named insured, and relatives, wards, or foster children of either. . . .
III. LIMITS OF LIABILITY
Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) motor vehicles to which this insurance applies,

(a) If the schedule or declarations indicates split limits of liability, the limit of liability for bodily injury stated as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person" the limit of liability for bodily injury stated as applicable to "each accident," is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident. The limit of liability for property damages stated as applicable to "each accident" is the total limit of the company's liability for all damages because of property damage to all property of one or more insureds as the result of any one accident.

Also applicable to the instant case, the Declarations Page of the Progressive policy, which was attached as Exhibit B to plaintiff's Motion for Summary Judgment and as Exhibit C to defendant Progressive's Motion for Summary Judgment, includes the following language:

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle. . . .

"Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009). "An ambiguity exists when [a] contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time. The mere fact that the parties disagree about the meaning of [a] contract's terms is not evidence that the contract language is ambiguous." *Pocahontas Mining, Ltd. v. CNX Gas Co.*, 276 Va. 346, 353, 666 S.E.2d 527, 531 (2008) (internal citations omitted).

When a disputed policy term is unambiguous, a court applies its plain meaning as written. *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 81, 677 S.E.2d 299, 302 (2009). However, if disputed policy language is ambiguous and can be understood to have more than one meaning, a court must construe the language in favor of coverage and against the insurer. *Id.* Because insurance policies usually are drafted by insurers, a court must construe "ambiguous policy language purporting to exclude certain occurrences from coverage most strongly against the insurer. Thus, when an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." *Id.*

In addition to these basic principles governing the interpretation of insurance policies, the Supreme Court of Virginia has also articulated a general rule that courts apply to issues involving the stacking of UM/UIM coverage. *Id.* "[I]t is now the rule in Virginia that the stacking of UM[/UIM] coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage. Thus, under previously stated general principles, any ambiguity regarding the stacking of coverage within a policy will be construed against the insurer." *Id.* (quoting *Goodville Mut. Casualty Co.*, 221 Va. at 970, 275 S.E.2d at 627).

In *Goodville Mutual Casualty Co. v. Borror*, the Supreme Court of Virginia considered a motor vehicle insurance policy which covered two vehicles, and where two separate premiums were charged. Goodville Mutual's stated UM limit of liability for damages to any one person as the result of a single accident was limited to $25,000.00. The plaintiff in *Goodville* sought to raise this limit by stacking together the UM coverage for the two listed vehicles. In the "Limits of Liability" section of the uninsured motorist coverage, the policy provided, in part:

> Regardless of the number of … motor vehicles to which this insurance applies,
> (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person," the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all

damages because of bodily injury sustained by two or more persons as the result of any one accident.

*Goodville Mut. Casualty Co.*, 221 Va. at 970, 275 S.E.2d at 627. The Supreme Court held that the language of Goodville Mutual's policy: "regardless of the number of ... motor vehicles to which this insurance applies," was "clear and unambiguous and require[d] the construction that stacking is not permissible." *Id.* at 971, 275 S.E.2d at 628; *see also Mitchell v. State Farm Mut. Auto. Ins. Co.*, 227 Va. 452, 318 S.E.2d 288 (1984). When compared side-by-side, the "Limits of Liability" portion of the UM/UIM coverage section of the *Goodville* policy and that of the subject Progressive policy are nearly identical, the only difference being Progressive's inclusion of the additional phrase at the beginning of subsection (a): "If the schedule or declarations indicates split limits of liability." The addition of this phrase does not alter the substance of the language or create an ambiguity.

In *Virginia Farm Bureau Mutual Ins. Co. v. Williams*, 278 Va. 75, 677 S.E.2d 299 (2009), the Supreme Court considered a case where the insurance policy contained the same language in its UM/UIM coverage section as that previously held to be unambiguous in *Goodville*. The court noted that, although the UM/UIM coverage section contained the same language, "that similarity must be considered in the context of the other policy language." *Id.* at 82, 677 S.E.2d at 303. The policy in *Virginia Farm Bureau*, unlike in *Goodville*:

> [D]oes not state the limits of liability for "each person" in a schedule within the UM/UIM endorsement. Instead, the UM/UIM endorsement refers the reader to the "[d]eclarations" page of the policy, in which there are three references to the term "each person." Two of those references state a limit of liability for "each person" in the amount of $300,000, while the third reference states a limit of liability for "each person" in the amount of $250,000.
>
> These different sets of coverage, when considered along with the "anti-stacking" language of the UM/UIM endorsement, leave unresolved the question whether all three separate limits for "each person" apply and, if not, which of the single separate limits for "each person" is applicable. This disparity in the stated limits of liability for "each person"

manifests an ambiguity regarding the extent of total coverage for "each person" under the policy.

*Id.* at 83, 677 S.E.2d at 303.

Therefore, in *Virginia Farm Bureau,* the Supreme Court specifically cited two ambiguities: (1) whether only one or all three limits for "each person" applied; and (2), if only one limit for "each person" applied, which should be chosen, $300,000.00 or $250,000.00. In the instant case, the subject policy does not contain the same ambiguities that were present in *Virginia Farm Bureau;* here, the Progressive policy does not contain different amounts of limits for "each person," but instead provides the same UM/UIM limit for "each person," $50,000.00 per vehicle. The fact that two vehicles were insured and two separate premiums were charged is of no consequence. The subject Progressive policy also goes a step further than the policy in *Virginia Farm Bureau* by including on its declarations page the language: "The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle." This language resolves the issue of whether the limits for only one vehicle or for all vehicles listed under the policy apply. A plain reading of the declarations page in conjunction with the "Limits of Liability" section of the Progressive policy clearly restricts the limit for "each person" to the coverage on one vehicle.

Plaintiff argues that the Progressive policy is ambiguous because it fails to provide limits for "each person" and "each accident" in a designated schedule within the UM/UIM section of the subject policy; instead, the Progressive policy UM/UIM endorsement refers the policyholder to a declarations page for the "each person" and "each accident" limits of liability. However, the use of a declarations page was not identified as an ambiguity by the Supreme Court in *Virginia Farm Bureau.* As discussed above, the ambiguities identified there were the disparity of the policy coverages contained on the declarations page and a lack of instruction as to which limit or how many limits applied. Had the Supreme Court considered the use of a declarations page itself to be an ambiguity, it would have stated so in clear and specific terms as it identified the other ambiguities that were present in the policy.

Plaintiff also argues that the term "vehicle" as used on the Progressive policy declarations page is not specifically defined in the policy, and, therefore, using the "usual and ordinary definition" of "vehicle," a "policyholder would logically conclude[] that the limitation to combining coverages found in the Progressive policy affects only those

coverages involving a *vehicle* (such as property damages, collision, and comprehensive) and would not limit coverage involving bodily injury and/or UM/UIM coverage." (Pl. Br. in Supp. of Mot. for Sum. J., at 12.) This, however, would require a strained and awkward reading of the declarations page. Upon a plain reading, it is clear that the term "vehicle" refers to the two vehicles actually listed on the declarations page, a 2003 Ford F150 and a 1991 Chevrolet V1500 Suburban, and not to a *type* of coverage involving a vehicle as the plaintiff suggests.

## *Conclusion*

For the reasons stated above, the Court is of the opinion that the subject Progressive policy is not ambiguous and, therefore, successfully prohibits "stacking" of UM/UIM coverage. Therefore, the available UIM coverage for plaintiff Salzman is limited to $50,000.00, which, after the $25,000.00 credit available from defendant Kanchev's Allstate policy, would leave defendant Progressive's potential UIM exposure at $25,000.00.

Therefore, defendant Progressive's Motion for Summary Judgment is granted and plaintiff Salzman's Motion for Summary Judgment is denied.