# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Thelma Bryant
and Kaitlyn Harlow,
by Thelma Bryant,
her mother and next friend

v.

Selective Insurance Co.
of the Southeast

February 3, 2011

Case No. 2010-178

By Judge Edward L. Hogshire

Plaintiff Thelma Bryant, as mother and next friend of Kaitlyn Harlow, a minor ("Plaintiff"), filed a Complaint for Declaratory Judgment against Selective Insurance Company of the Southeast ("Selective"). Plaintiff seeks a declaratory judgment that the language of the policy covering Plaintiff and Bryant allows for intra-policy "stacking" sufficient to provide up to $300,000 in underinsured motorist coverage. Both parties have filed Motions for Summary Judgment supported by memoranda of law, and the Court heard argument by counsel on December 6, 2010. For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment.

*Statement of Facts*

The facts have been derived from the Plaintiff's memoranda in support of her Motion for Summary Judgment and are not in dispute.

On March 17, 2010, Kaitlyn Harlow, the minor Plaintiff, was injured when her vehicle was struck by another vehicle. (Mem. in Supp. of Pl.'s Mtn. for Summ. J. 1-2.) At the time of the accident, Plaintiff was driving a vehicle that was listed in an insurance policy issued by Selective to the infant's mother, Thelma Bryant, a named insured. (*Id.* 2.) The other car involved in the accident was insured by an USAA insurance policy and had only $25,000 of liability insurance coverage. (*Id.*) Plaintiff alleges that she suffered damages that exceeded the amount of coverage under the USAA policy. (*Id.*)

It is undisputed that the policy at issue covers three automobiles owned by the Plaintiff's family and that a separate premium was charged for uninsured/underinsured ("UM/UIM") coverage for each vehicle. (*Id.*; Mem. in Opp. to Pl.'s Mtn. for Summ. J. 1.) The Declarations Page of the policy includes the following:

| Covered Auto No. | Uninsured Motorists Bodily Injury | Automobile Coverages and Limits of Liability | Full Term Premium |
|---|---|---|---|
| 01 | $100,000 each person | $300,000 each accident | 65.98 |
| 02 | $100,000 each person | $300,000 each accident | 58.98 |
| 03 | $100,000 each person | $300,000 each accident | 58.98 |

(Ex. A to the Compl. ¶ 2.)

Following the description of the terms of the insuring agreement and exclusions in Part C of the Policy, entitled "Uninsured Motorists Coverage," the Policy provides a "Limit of Liability" section that includes a provision purportedly preventing intra-policy stacking of the UM/UIM coverage for the three cars covered by the Policy. The limitation reads as follows:

### Limit of Liability

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services, or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident

The limit of Property Damage liability shown on the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.

This is the most we will pay regardless of the number of
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations. . . .

(*Id.* PP 14 03 01 05, page 2 of 3.)

The complaint for declaratory judgment filed by Plaintiff contains two counts. Count One is entitled "UM/UIM Coverage may be Stacked Based Upon the Payment of Multiple Premiums for UM/UIM Coverage." (*See* Compl. ¶¶ 17-24.) Count Two is entitled "The Declarations Page Affirmatively Authorizes Stacking." (*See id.* ¶¶ 25-29.) After each count, the Plaintiff demands judgment against Selective for coverage under the underinsured motorist coverage up to $300,000 for her claims against the underinsured driver. (*See id.* ¶¶ 24, 29.)

## Question Presented

Whether the insurance policy drafted by Selective Insurance Company should be interpreted as prohibiting or authorizing intra-policy "stacking" of underinsured motorists coverage.

## Standard of Review

This action is filed pursuant to the Virginia Declaratory Judgment Act. *See* Va. Code § 8.01-184 *et seq.* Because an actual controversy exists, the matter is justiciable. *See USAA Cas. Ins. Co. v. Randolph*, 255 Va. 342, 497 S.E.2d 744 (1998). Accordingly, this Court has the authority to make a binding declaration of rights pursuant to the Policy and the Plaintiff's coverage thereunder. *See Erie Ins. Group v. Hughes*, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990). The Court shall enter summary judgment when there are no genuine issues of material fact and when it "appears from the pleadings . . . that the moving party is entitled to judgment." Va. Sup. Ct. R. 3:20. The parties do not dispute the facts of this case. (Mem. in Supp. of Pl.'s Mtn. for Summ. J. 3.) In addition to the facts, the Court may rely on the Policy and Declarations attached to the filings. *See Robberecht Seafood, Inc. v. Maitland Bros.*, 220 Va. 109, 255 S.E.2d 682 (1979). The determination of coverage under insurance policies is an arena in which summary judgment is appropriate. *McDaniel v. State Farm Mutual*, 205 Va. 815, 139 S.E.2d 806 (1965).

The general law concerning insurance policy interpretation is well settled. The words and phrases used in insurance contracts should be given the meaning that they receive in the ordinary affairs of life. *Moore v. State Farm Mut. Auto. Ins. Co.*, 248 Va. 432, 435, 448 S.E.2d 611, 613 (1994) (applying unambiguous language of insurance policy as written); *see also Marandino v. Lawyers' Title Ins. Corp.*, 156 Va. 696, 700, 159 S.E. 181, 182-83 (1931) (explaining that insurance policy language is construed in accordance with the common understanding of the words used). When a policy is unclear or ambiguous on a specific issue, it "will be given an interpretation which grants coverage, rather than one which withholds it." *American Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 385 S.E.2d 583, 585 (1989) (*citing St. Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 316 S.E.2d 734, 736 (1984)). Further, it is "now the rule in Virginia that the stacking of [uninsured motorists] coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville Mutual Casualty Co. v. Borror*, 221 Va. 967, 970, 275 S.E.2d 625, 627 (1981); *accord Lipscombe v. Security Ins. Co. v. Security Ins. Co.*, 213 Va. 81, 84, 189 S.E.2d 320, 323 (1972).

## Analysis

Plaintiff argues that the Selective insurance policy, at best, affirmatively authorizes intra-policy "stacking" of underinsured motorist coverage and, at worst, is ambiguous and thus should be construed against the Defendant to allow stacking. (Mem. in Supp. of Pl.'s Mtn. for Summ. J. 16, 18.) Defendant argues that the "Limits of Liability" section of the policy clearly and unambiguously prohibits stacking. (Def.'s Mtn. for Summ. J. ¶ 1.)

Two cases on intra-policy stacking of UM/UIM coverage decided by the Supreme Court of Virginia are relevant to this dispute. In *Goodville Mutual Casualty Co. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981), the policy at issue offered UM/UIM coverage for "Bodily injury $25,000 each person; $50,000 each accident; Property Damage $5,000 each accident." *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 82, 677 S.E.2d 299, 303 (2009). It also provided a limit of liability in the same UM/UIM section:

> *Regardless of the number of . . . motor vehicles to which this insurance applies,* (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person," the limit of liability stated in the schedule as

> applicable to "each person" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

*Borror*, 221 Va. at 970, 275 S.E.2d at 627 (emphasis in original). Although the policy contained separate premiums for the two vehicles listed in the policy, the court concluded that the policy language, particularly the phrase "[r]egardless of the number of . . . motor vehicles to which this insurance applies," clearly and unambiguously prohibited stacking. *Id.* at 970-71, 275 S.E.2d at 628.

In *Virginia Farm Bureau v. Williams*, 278 Va. 75, 677 S.E.2d 299 (2009), the Supreme Court allowed intra-policy stacking of a policy that contained the same limiting language as that found in *Borror*. In that case, a minor was injured while riding in an underinsured vehicle that was in an accident with another uninsured vehicle, neither of which were covered by the policy at issue. *Id.* at 78, 677 S.E.2d at 300. Williams qualified as a first class insured under her father's insurance policy, which provided uninsured and underinsured coverage for three separate vehicles. *Id.* The plaintiff sought to stack the underinsured coverage under the policy covering her family's three vehicles. *Id.* at 79, 677 S.E.2d at 301. The policy did not state the policy limits within the UM/UIM section as the policy in *Borror* did, but instead referenced the declarations page:

| Bodily Injury | $ See Declarations | each person |
| | $ See Declarations | each accident |
| Property Damage | $ See Declarations | each accident. |

*Id.* at 78, 677 S.E.2d at 300. The declarations page listed one premium paid for a vehicle of $250,000 each person and two premiums paid on the other two vehicles of $300,000 each person. *Id.* at 78-79, 677 S.E.2d at 301. The Court found that the anti-stacking clause could not be applied clearly and unambiguously because the declarations page contained two different UM/UIM motorist coverage amounts, "leav[ing] unresolved the question whether all three separate limits for 'each person' apply and, if not, which of the single separate limits for 'each person' is applicable." *Id.* at 83, 677 S.E.2d at 303.

*Williams*, therefore, established that the presence of a clear anti-stacking provision using language from *Borror* does not forbid stacking alone, but must be read in the context of the entire policy to ascertain whether stacking is clearly and unambiguously prohibited. Virginia courts interpreting *Williams* overwhelmingly agree that the two different "each person" premiums was the source of ambiguity. *See Collier v. Erie Exchange*, Case No. CL-10-86 (Va. Cir. Ct. Sept. 12, 2010); *Joyce v. Hayes and Nationwide*, Case No. CL09-833 (Va. Cir. Ct. June 25, 2010); *O'Brien v. Oatman*, Case

No. CL09-5381 (Va. Cir. Ct. June 23, 2010); *Patterson v. Nationwide*, Case No. CL09-2805 (Va. Cir. Ct. April 26, 2010); *Salzman v. Kanchev*, 80 Va. Cir. 139 (2010).

In the case at hand, the policy contains anti-stacking language that is almost identical to the language in *Borror*. The Plaintiff argues, however, that the policy affirmatively authorizes stacking on the declarations page and that, taken as a whole, it is ambiguous in light of *Williams* because there were multiple premiums charged, the schedule of premiums was not in the same section as the anti-stacking language, and the references to "underinsured" as compared to "uninsured" are ambiguous.

First, Plaintiff asserts that the policy affirmatively authorizes stacking or is ambiguous under *Williams* because the Declarations Page specifies three premiums for uninsured coverage and thus the reasonable expectation of the insured is that "each time a UIM premium is shown UIM coverage is provided"; that is, a policyholder would expect to be able to stack coverage where all premiums are listed. (Mem. in Supp. of Pl.'s Mtn. for Summ. J. 16.) This, according to Plaintiff, is sufficient under the *Williams* framework to be found ambiguous and permit stacking. (*Id.* 20.)

However, this argument defies common sense and the specific anti-stacking language of the policy. The uninsured motorists premiums are listed specifically per vehicle, limiting each premium's liability to $100,000 per person with a maximum of $300,000 per accident. A reasonable consumer reading this Declarations Page understands that, in the case of an accident in one of the vehicles, even if occupied by all three insured people, the policy is providing a maximum of $100,000 worth of coverage for each person with a maximum of $300,000 per accident. Separate premiums for each vehicle are necessary because there is a difference in the degree and amount of risk assumed based on the type of vehicle covered. Further, each premium is tied to a specific vehicle, and, unlike the plaintiff in *Williams*, it is clear that a vehicle involved in an accident has uninsured motorist coverage in the amount of $100,000 per person, $300,000 per accident. *See Williams*, 278 Va. at 78, 677 S.E.2d at 300.

In addition, the Declarations portion begins with the language that "the limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." (Ex. A to the Compl. P2.) Thus the Declarations Page specifically subjects all premiums to certain limits of liability, specifically the anti-stacking language. The Declarations Page is not ambiguous in the amount of coverage provided per vehicle while the endorsements include materially identical anti-stacking language found in *Borror* to be an unambiguous prohibition of stacking.

The Plaintiff also argues that the policy is ambiguous in its prohibition of stacking because it did not place numerical limits in the section containing the anti-stacking language. In support, Plaintiff cites

*Williams* as finding it "significant" that the policy did not list the numerical limits of liability but instead referred the reader to a declarations page with multiple "each person" limits. (Pl.'s Mem. 20.) However, the Court in *Williams* based its holding on the ambiguity caused by the existence of two different underinsured motorist coverage amounts. The "significant difference" between the policies in *Williams* and *Borror* was language in *Borror* clearly limiting the liability for "each person" while the *Williams* policy unclearly listed one "each person" limit for bodily injury by referring the policyholder to the declarations page, which incongruously contained two "each person" limits of liability for bodily injury. Here, the language in the "Limit of Liability" simply refers the policyholder to the Declarations Page, which creates no ambiguity because the Declarations Page clearly states a single "each person" limit of liability. *See Collier*, No. CL10-86; *Davis v. Nationwide Mut. Ins. Co.*, 81 Va. Cir. 144 (2010); *Joyce*, No. CL09-833; *Patterson*, No. CL 09-2805; *Salzman*, 80 Va. Cir. Ct. at 146-47.

Finally, Plaintiff argues that the references to "underinsured" as compared to "uninsured" are ambiguous and that the failure to clearly indicate that stacking will not be allowed for underinsured motorist coverage renders the policy ambiguous. (Resp. to Mem. in Supp. of Def.'s Mtn. for Summ. J. 3.) For example, Plaintiff points to Part C, "Uninsured Motorist Coverage," where the "Limit of Liability" section mentions "underinsured" coverage in Paragraph B but not in Paragraph A, and argues that none of the seven references to underinsured motorist coverage "give any clear guidance as to when underinsured coverage stacks and when or if it does not stack." (Mem. in Supp. of Pl.'s Mtn. for Summ. J. 23, 25.)

At least one Virginia court has held that nearly identical anti-stacking provisions referring only to "Uninsured Motorists Coverage" clearly and unambiguously barred stacking of underinsured motorist limits. *Davis, supra.* However, that court did not address the specific issue of "uninsured" versus "underinsured." A federal district court applying Virginia law did address this argument and found it non-persuasive. *Trigo v. Travelers Com. Ins. Co.*, Case No. 3:10-cv-00028 (W.D. Va. 2010). This Court agrees with the holding in *Trigo*, finding that, when taking the Policy as a whole, a reasonable person would expect that the reference to "Uninsured Motorists Coverage" in the "Limit of Liability" provision of Part C includes underinsured coverage.

Specifically, Part C of the policy is entitled "Uninsured Motorists Coverage" and covers both uninsured and underinsured motorists. The Declarations Page, to which Plaintiff looks for coverage against the underinsured driver, lists coverage for "Uninsured Motorists" bodily injury and property damage. (Ex. A to the Compl. ¶ 2.) Although no reference is made to "Underinsured Motorists" anywhere on the Declarations Page, neither party disputes that coverage against underinsured motorists is provided for under this heading. Subsequently, the anti-stacking language

in the "Limit of Liability" section of Part C specifically addresses the "Uninsured Motorists Coverage" shown in the Declarations Page, which covers both uninsured vehicles as well as underinsured vehicles. "Thus, when the Policy limits liability and prohibits stacking for the limits shown in the declarations for each person and each accident for 'Uninsured Motorists Coverage,' it is clearly referring to the same body of coverage that the declarations encompass, i.e., both uninsured and underinsured coverage." *Trigo*, Case No. 3:10-cv-00028. That is, the "Limit of Liability" unambiguously limits the coverage provided against both uninsured and underinsured vehicles in the Declarations Page.

In sum, the Selective Policy at hand contains language almost identical to the language found to be unambiguous in *Borror* and prior cases and does not contain the ambiguity of the *Williams* case. Therefore, the policy is not ambiguous, and the clear language preventing stacking of intra-policy coverage controls.

## Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment is therefore granted, and the Plaintiff's Motion for Summary Judgment is denied.